BOBBY GHAJAR # 198719
bobby.ghajar@pillsburylaw.com
MARCUS D. PETERSON # 265339
marcus.peterson@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406

Telephone:  213.488.7100
Facsimile:   213.629.1033

Attorneys for Defendants WEMESH, INC. and
MICHAEL PAZARATZ

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEMASH, INC., a Delaware corporation,<br><br>                              Plaintiff,<br><br>        v.<br><br>WEMESH INC., an Ontario, Canada corporation; and MICHAEL PAZARATZ, an individual,<br><br>                              Defendants. | Case No. 2:15-CV-8719 JFW (JPRx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT [Fed. R. Civ. 12(b)(2) and 12(b)(6)];**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     January 25, 2016<br>Time:     1:30 p.m.<br>Crtrm:    16<br><br>Judge:   Hon. John F. Walter |

1      TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF

2  RECORD:

3      PLEASE TAKE NOTICE that on January 25, 2016, at 1:30 p.m., or as soon

4  thereafter as Defendants WeMesh, Inc., and Dr. Michael Pazaratz ("Defendants")

5  may be heard before the Honorable John F. Walter in Courtroom 16 of the above-

6  entitled Court, located at 312 North Spring Street, Los Angeles, CA 90012,

7  Defendants will and hereby do move to dismiss the Claims I, II, III, V, and VI of

8  the Complaint [Dkt. 1] because:

9      (1)    Plaintiff has not alleged facts demonstrating that this Court has

10              personal jurisdiction over Dr. Pazaratz;

11     (2)    Plaintiff has not alleged facts demonstrating why Dr. Pazaratz

12              would be liable for the claims in the Complaint;

13     (3)    All of Plaintiff's trademark-related claims fail to state a claim

14              upon which relief may be granted; and

15     (4)    Separately, Plaintiff's cybersquatting claim fails to state a claim

16              upon which relief may be granted.

17     This motion is supported by this Notice of Motion; the accompanying

18 Memorandum of Points and Authorities; the Declaration of Marcus Peterson and

19 the attached exhibits thereto (of which the Court is requested to take judicial

20 notice, including for the purpose of determining whether leave to amend should be

21 granted); the proposed Order, and such other evidence and arguments as may be

22 presented at or before the hearing on this motion, and all other matters of which the

23 Court may deem appropriate to consider.

24     This motion is made following the conference of counsel pursuant to L.R. 7-

25 3, which took place on December 21, 2015, as summarized in the Joint Report of

26 Meet and Confer Efforts Regarding Defendants' Motion to Dismiss (Dkt. 18).

27 Plaintiff's counsel indicated that it would not amend any aspect of its Complaint.

28

1

Dated:  December 28, 2015

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PILLSBURY WINTHROP SHAW PITTMAN LLP
BOBBY GHAJAR
MARCUS D. PETERSON

By: __/s/ Bobby Ghajar_____
    Bobby Ghajar
    Marcus D. Peterson
Attorneys for Defendants WEMESH, INC. and
MICHAEL PAZARATZ

-3-

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................ 1

II.    FACTUAL BACKGROUND ............................................... 3

    A.    Background on the Parties and Their Products/Services .................... 3

    B.    Allegations Against Defendants ..................................... 4

    C.    Allegations Against Dr. Pazaratz ................................... 5

    D.    Meet and Confer Efforts Preceding this Motion ................... 5

III.    ARGUMENT ................................................................ 6

    A.    Legal Standard on Motions to Dismiss .............................. 6

    B.    All Claims Against Dr. Pazaratz Should be Dismissed for Lack of Personal Jurisdiction and Failure to State a Claim .................... 7

        1.    The Court Does Not Have Personal Jurisdiction Over Dr. Pazaratz .................................................... 7

        2.    The Complaint Also Fails to State a Claim Against Dr. Pazaratz, Individually. .......................................... 9

        3.    Any Attempted Amendment as to Dr. Pazaratz Would be Futile ................................................................ 9

    C.    Plaintiff Has Failed to State a Claim for Trademark Infringement or Unfair Competition Against WeMesh ................... 11

        1.    The Complaint Fails to Allege Sufficient Facts Relating to Plaintiff's Alleged, Prior Common Law Trademarks .......... 11

        2.    Plaintiff Must Allege Trademark Use of WEMASH and WEMES Prior to Defendant's Constructive Priority Date of May 5, 2014 .......................................... 12

        3.    Plaintiff's Allegations of Prior Trademark Use are Legally Insufficient to Establish Common Law Priority over Defendants ............................................... 13

        4.    Leave to Amend Should Be Denied as Futile ................ 20

    D.    Plaintiff Has Failed to State a Claim for Cybersquatting Against Defendants ................................................... 21

        1.    Plaintiff's Conclusory Allegations of "Bad Faith Intent to Profit" Are Insufficient to State a Claim for Cybersquatting ................................................... 22

2.    Separately, Plaintiff's Cybersquatting Claim Fails as to the wemesh.com Domain Name because it was Registered in May 2002........................................................23

3.    Plaintiff Cannot Assert That Defendants' Non-U.S. Domain Names Were Registered in Violation of the ACPA ..............................................................................24

IV.    CONCLUSION ...............................................................25

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-CV-8719 JFW (JPRx)

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*,
No. CV 10-03738 AB (CWx), 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015) ..................................................................................................23

*Akhenaten v. Najee, LLC*,
544 F. Supp. 2d 320 (S.D.N.Y. 2008) ..........................................21

*Alto Velo Racing Club v. Rouleur Sports Grp., LLC*,
2015 WL 5462055 (N.D. Cal. Sept. 17, 2015) ....................................11

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
551 F.2d 784 (9th Cir. 1977) ..................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................passim

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1988) ..................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................7, 10

*Bosley Medical Inst. v. Kremer*,
403 F.3d 672 (9th Cir. 2005) ..................................................22

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) ..................................................3, 7

*Brookfield Commun's v. W. Coast Entm't*,
174 F.3d 1036 (9th Cir. 1999) ..............................................12, 17

*Carvalho v. Equifax Information Services, LLC*,
 629 F.3d 876 (9th Cir. 2010) ..................................................8

*Chance v. Pac-Tel Teletrac Inc.*,
242 F.3d 1151 (9th Cir. 2001) ..............................................12, 15

*CreAgri, Inc. v. USANA Health Sciences, Inc.*,
474 F.3d 626 (9th Cir.2007) ..................................................13

*Credit One Corp. v. Credit One Financial, Inc.*,
661 F.Supp.2d 1134 (C.D.Cal.2009) ......................................14, 19, 20

*Davis v. Metro Prods., Inc.*,
885 F.2d 515 (9th Cir. 1989) ..................................................10

*Doe v. American Nat'l Red Cross*,
112 F.3d 1048 (9th Cir. 1997) ..................................................9

-iii-

*Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*,
   104 F. Supp. 3d 371 (S.D.N.Y. 2015)................................................................23

*Glow Indus. Inc. v. Lopez*,
   252 F.Supp.2d 962 (C.D.Cal.2002) ............................................................14, 20

*GoPets Ltd. v. Hise*,
   657 F.3d 1024 (9th Cir. 2011)............................................................................24

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1990) ..............................................................................7

*Hana Fin., Inc. v. Hana Bank*,
   2011 WL 2581458 (C.D. Cal. June 29, 2011), *aff'd*, 735 F.3d 1158 (9th
   Cir. 2013) *aff'd*, 135 S. Ct. 907, 190 L. Ed. 2d 800 (2015) ...............................11

*Hana Fin., Inc. v. Hana Bank*,
   500 F. Supp. 2d 1228 (C.D. Cal. 2007) ..............................................................16

*HMS Stores, LLC v. RGM Distribution, Inc.*,
   2015 WL 1299750 (C.D. Cal. Mar. 3, 2015).......................................................24

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ...............................................................................................8

*Kaplan, Inc. v. Yun*,
   16 F. Supp. 3d 341 (S.D.N.Y. 2014)...................................................................23

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ...............................................................................8

*Milbank Tweed Hadley & McCloy LLP v. Milbank Holding Corp.*
   No. CV 06-187-RGK (JTLx), 2007 WL 1438114 (C.D. Cal. Feb. 23,
   2007)..................................................................................................................24

*Mystique, Inc. v. 138 Int'l, Inc.*,
   375 F. App'x 997 (11th Cir. 2010)......................................................................16

*New World Solutions, Inc. v. NameMedia, Inc.*,
   2015 WL 8958390 (S.D.N.Y. Dec. 15, 2015) ...............................................22, 24

*North Star Int'l v. Arizona Corp. Comm'n.*,
   720 F.2d 578 (9th Cir. 1983)..................................................................................7

*Parham v. Pepsico, Inc.*,
   927 F. Supp. 177 (E.D.N.C. 1995), *aff'd*, 86 F.3d 1151 (4th Cir. 1996) ............12

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995)..................................................................................7

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006)................................................................................8

*Pollution Denim & Co. v. Pollution Clothing Co.*,
   547 F. Supp. 2d 1132 (C.D. Cal. 2007) ..............................................................13

-iv-

*Quiksilver, Inc. v. Kymsta Corp.*,
  466 F.3d 749 (9th Cir. 2006) ................................................................. 14

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (2004) ........................................................................... 9

*Selfway, Inc. v. Travelers Petroleum, Inc.*,
  579 F.2d 75 (C.C.P.A. 1978) ............................................................. 18

*Sengoku Works Ltd. v. RMC Intern., Ltd.*,
  96 F. 3d 1217 (9th Cir. 1996) ........................................................... 13

*Spacey v. Burgar*,
  207 F. Supp. 2d 1037 (C.D. Cal. 2001) ............................................. 11

*Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*,
  922 F. Supp. 299 (C.D. Cal. 1996) ...................................................... 7

*T.A.B. Sys. v. Pactel Teletrac*,
  77 F.3d 1372 (Fed. Cir. 1996) ..................................................... 16, 19

*The Pnc Fin. Servs. Grp., Inc. v. Ashe*,
  2013 WL 5820850 (TTAB Oct. 15, 2013) ........................................ 17

*Twombley* ......................................................................... 12, 18, 21

*Walter v. Mattel, Inc.*,
  210 F.3d 1108 (9th Cir. 2000) .......................................................... 12

*Wine Grp., LLC v. L. & R. Wine Co.*,
  2012 WL 3962500 (E.D. Cal. Sept. 10, 2012) ......................... 14, 19, 20

*Zirco Corp. v. Am. Tele. & Tele. Co.*,
  21 U.S.P.Q.2d 1542 (TTAB 1991) .................................................... 13

**Statutes and Codes**

California Business and Professions Code
  Section 17200 .................................................................................... 8

United States Code
  Title 15, section 1057(c) ................................................................... 13
  Title 15, section 1119 ......................................................................... 3
  Title 15, section 1125(a) ..................................................................... 3
  Title 15, section 1125(d) ..................................................................... 3
  Title 15, section 1125(d)(1) .............................................................. 24
  Title 15, section 1125(d)(1)(A) (2004) ......................................... 22, 23

**Rules and Regulations**

Federal Rules of Civil Procedure
  Rule 11 ............................................................................................. 22
  Rule 12(b)(2) ................................................................................... 1, 8
  Rule 12(b)(6) ...................................................................................... 6

-v-

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-CV-8719 JFW (JPRx)

Federal Rules of Evidence

Rule 201 ..........................................................................................7

## Other Authorities

6 McCarthy on Trademarks and Unfair Competition § 32:54 (4th ed.)..................21

-vi-

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This is a case filed by Plaintiff WeMash, Inc. ("Plaintiff") in an attempt to gain settlement leverage with Defendant WeMesh, Inc. ("WeMesh") – the owner of the federally-registered mark WEMESH®.  Because Plaintiff had no defense to its decision to release an app called WEMES well *after* WeMesh had an established presence on the various app stores, Plaintiff went on the offensive, haling WeMesh – a Canadian company – into court in Los Angeles with only the most vague assertions of jurisdiction; naming the company's president as a defendant with no factual allegations as to jurisdiction over him; and making incomplete and deficient allegations of trademark infringement and cybersquatting. The Complaint should be dismissed on four grounds.

*First*, the Complaint fails to allege any facts establishing personal jurisdiction over Defendant Dr. Michael Pazaratz ("Dr. Pazaratz") – a Canadian resident.  Plaintiff alleged no facts relating to Dr. Pazaratz's supposed contacts with this District that would give rise to jurisdiction over him, and the Complaint must therefore be dismissed as against him pursuant to Fed. R. Civ. P. 12(b)(2).

*Second*, the Complaint does not allege any facts indicating why Dr. Pazaratz could, or would, be personally liable for the claims against WeMesh.  Thus, the Complaint fails to state a claim against Dr. Pazaratz.

*Third*, as to its trademark-related claims (Claims I, III, V, and VI), Plaintiff must allege (and eventually establish) that it owns valid trademark rights in its asserted marks.  Because WeMesh owns a federal trademark registration, Plaintiff bears the burden of establishing the geographic scope and market penetration, if any, of its common law trademark rights in the WEMASH and WEMES marks *prior* to the date that WeMesh filed its intent-to-use trademark application (WeMesh's "constructive priority" date).  The Complaint fails completely in this regard.  Trademark rights are established through use of a mark in a manner

through which the general consuming public associates the mark with the source of a product.   Trademark rights do not derive from conceiving of a name; registering a domain name; or creating materials for investors –the very activities on which the Complaint relies to allege use prior to WeMesh's constructive priority date.  None of the factual allegations in the Complaint, therefore, establishes use in commerce of Plaintiff's asserted trademarks at all, let alone prior to WeMesh's constructive priority date of May 5, 2014.  This failure dooms Plaintiff's claims for unfair competition, cancellation, and cybersquatting claims because they require that Plaintiff own valid trademark rights prior in time to Defendants.

**Fourth**, as a separate basis, Plaintiff's cybersquatting claim (Claim II) fails because: (1) Plaintiff has failed to plead facts alleging that Defendants registered domain names with knowing of Plaintiff's alleged rights, let alone with a "bad faith intent to profit" from an association with Plaintiff – as required under the law; (2) certain of the accused domain names were first registered *prior* to even Plaintiff's alleged first use of its trademark; and (3) Plaintiff cannot bring U.S. cybersquatting claims against non-U.S. top level domains (.ca (for Canadian companies) and .sh (a St. Helena country domain)) that were registered by a Canadian entity.

Plaintiff has attempted to mask the defects in its Complaint through bullish behavior and tactics that run afoul of the Rules of Civility and Professionalism- from refusing to grant Defendants more than a week to respond to the multi-count Complaint personally served on Defendants during Thanksgiving; only agreeing to an extension to the next business day after Christmas; being completely unprepared to discuss the legal requirements for personal jurisdiction, trademark priority when the other party owns a federal registration, and cybersquatting; and refusing to amend any aspect of the Complaint.  Dkt. 18.  This motion, however, is directed towards the Complaint filed by Plaintiff – not the theatrics of its counsel.  That pleading is deficient, and as explained below, those deficiencies cannot be cured.

1  As such, the Court should dismiss Claims I, II, III, V, and VI with prejudice.

2  **II.   FACTUAL BACKGROUND[1]**

3         Plaintiff filed its Complaint [Dkt. 1] on November 6, 2015, against

4  Defendants WeMesh, a Canadian corporation, and Dr. Pazaratz, a Canadian

5  citizen, alleging claims of: 1) federal unfair competition under the Lanham Act (15

6  U.S.C. § 1125(a)); 2) cybersquatting (15 U.S.C. § 1125(d)); 3) cancellation of

7  WeMesh's federal trademark registration (15 U.S.C. § 1119)); 4) declaratory

8  judgment of no trademark infringement; 5) unfair competition under California

9  statute; and 6) unfair competition under California common law.

10        **A.     Background on the Parties and Their Products/Services**

11        WeMesh is a Canadian corporation, and Dr. Pazaratz is a Canadian citizen.

12  Dkt. 1 at ¶¶2-3.  Both Plaintiff and WeMesh offer mobile applications for

13  smartphones and tablets ("apps").  *Id.* at ¶¶7, 21.  Plaintiff alleges that it owns

14  rights to the WEMASH and WEMES trademarks in connection with its "Wemes

15  App," which allows users to create integrated videos with text, graphic, or other

16  multimedia overlays (called video memes or "vemes").  *Id.* at ¶¶7-8.

17        Plaintiff does not allege when it first offered its app for sale or otherwise

18  offered any goods or services under the WEMASH or WEMES marks.  Plaintiff's

19  own website and social media accounts indicate that Plaintiff incorporated under

20  the  name WeMash in October 2014 and launched its "Wemes" app only three

21  months ago, on September 16, 2015. [2]  At the time Plaintiff filed its Complaint, the

22  Wemes app only had 16 reviews on the iTunes App Store.  *Id.* at ¶4.  Between

23  _____

24  [1] Unless otherwise stated, the factual allegations come directly from the allegations in the Complaint.

25  [2] *See* Declaration of Marcus D. Peterson (Peterson Decl.)  at ¶¶1-3.  Defendants submit these documents as background, and in order for the Court to evaluate whether to grant leave to amend the Complaint.  The Court may take judicial

26  notice of documents referenced in the complaint and whose authenticity is not challenged (*Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).  Here, Plaintiff

27  has alleged the existence of its web page and social media accounts, the contents of which are not reasonably subject to challenge.  The court can therefore take

28  judicial notice of the contents of those web pages in connection with this motion.

-3-

August 2014 and November 2015, Plaintiff's www.wemash.com domain name provided only a landing page with the name of the company, and contained no information regarding any mobile apps for sale, or any services it offered under its alleged WEMASH or WEMES marks.  Peterson Decl. at ¶5-6.

WeMesh designs and offers apps.  Its "WeMesh" app allows users to synchronize videos across mobile devices in order to allow users to watch videos together on multiple devices while simultaneously communicating via text or voice.  Dkt. 1 at ¶21.

As between the parties, only WeMesh owns a federal trademark registration – U.S. Trademark Reg. No. 4,757,374 for the word mark WEMESH in connection with "Downloadable mobile software applications for synchronizing multimedia content with audio and text communication; Computer software for synchronizing content between mobile devices."  Dkt. 1 at ¶29. WeMesh filed that application on May 5, 2014, and that mark was registered on June 16, 2015.  *Id.* at ¶¶28-29.

Plaintiff filed applications to register two marks, both on an "intent-to-use" basis: WEMASH, for which it applied on June 25, 2014, and WEMES, for which it applied on June 8, 2015 – both after WeMesh's filing date.  Neither of Plaintiff's applications has yet matured to registration.  *Id.* at ¶19.  On June 29, 2015, Plaintiff filed an extension of time to file a statement of use as to the WEMASH mark (Dkt. 1-1 at 3), indicating it had not yet made use of that mark.

### B.    Allegations Against Defendants

The Complaint alleges that "Defendants'" use of the WEMESH mark infringes Plaintiff's WEMASH and WEMES marks.  Dkt. 1 at ¶¶34, 47.

The Complaint does not describe any goods and services that Plaintiff marketed and sold under the WEMASH or WEMES marks prior to May 5, 2014, WeMesh's constructive priority.  The Complaint alleges, in general and vague terms, that Plaintiff conducted certain activities dating back to 2009 -- concluding that those activities demonstrate common law trademark use.

-4-

The Complaint does not attach examples of Plaintiff's alleged pre-May 2014 use of the WEMASH and WEMES marks, or allege what such use entailed. Moreover, the Complaint does not describe any pre-May 2014 use of the mark WEMES.  Plaintiff identifies no activities directed toward the public under the WEMASH and WEMES marks, as opposed to internally, to investors of the company (which would be insufficient to establish trademark rights).

The Complaint also includes a claim for cybersquatting, alleging that WeMesh "and/or" Dr. Pazaratz registered the domain names www.weme.sh, www.wemesh.com, www.wemesh.me, www.wemesh.tv, www.wemesh.co, www.wemesh.video, and www.wemesh.ca.  *Id.* at ¶¶24-25.  Plaintiff recognizes that "Defendants own and operate the website at http://weme.sh, where Defendants market, distribute and/or sell the WeMesh Goods nationwide and in this District." *Id.*at ¶24.  Plaintiff does not allege when the domains were first registered or that they were registered after Plaintiff first used its trademarks in commerce.

### C.    Allegations Against Dr. Pazaratz

The Complaint does not recite any facts as to why this Court would have personal jurisdiction over Dr. Pazaratz, a Canadian resident.  It has a single allegation relating to personal jurisdiction over "Defendants" with no specificity. See *id.* at ¶5.  The Complaint uses the term "Defendants" throughout as a reference to both WeMesh and Dr. Pazaratz, and uses that term in the headings of Claims II, V, and VI of the Complaint.  The Complaint does not recite any facts relating to the activities in which Dr. Pazaratz allegedly engaged that would give rise to any personal liability for the claims in the Complaint.  During the parties' pre-filing meet and confer communications, Plaintiff claimed that Dr. Pazaratz's registration of certain domain names was the basis for alleging claims directly against him. *See, e.g.,* Dkt. 18 at 13.

### D.    Meet and Confer Efforts Preceding this Motion

On December 17, counsel for Defendants sent a meet and confer letter to

-5-

1   opposing counsel, outlining the issues raised in the present motion.  During the

2   meet and confer conference, Plaintiff's counsel requested guidance as to how

3   Plaintiff could amend the Complaint and stated it "was not [her] burden to debate

4   legal issues."  The next day, counsel stated she needed more time to "confer" with

5   her client regarding amending the Complaint, only to confirm three days later that

6   Plaintiff would not amend the Complaint in any respect.  *See* Dkt. 18.

7   **III.   ARGUMENT**

8       **A.   Legal Standard on Motions to Dismiss**

9           A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) tests the

10  legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6)

11  dismissal is proper only where there is either a 'lack of a cognizable legal theory'

12  or 'the absence of sufficient facts alleged under a cognizable legal theory.'"

13  *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp.

14  299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d

15  696, 699 (9th Cir. 1988)).  While a court must assume that all factual allegations in

16  the complaint are true and draw reasonable inferences in a light most favorable to

17  the plaintiff, a pleading that offers only "labels and conclusions," or "a formulaic

18  recitation of the elements of a cause of action," or one that sets forth "'naked

19  assertions' devoid of 'further factual enhancement,'" will not pass muster under

20  this standard.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

21  *v. Twombly*, 550 U.S. 544, 555-57 (2007)); "[A] court need not accept as true

22  unreasonable inferences, unwarranted deductions of fact, or conclusory legal

23  allegations cast in the form of factual allegations." *Summit Technology*, 922 F.

24  Supp. at 304.

25          "Generally, a district court may not consider any material beyond the

26  pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard*

27  *Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted).

28  However, a court may consider material which is properly submitted as part of the

-6-

complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment.  *Branch*, 14 F.3d at 454.

A complaint may be dismissed without leave to amend where the plaintiff cannot allege facts sufficient to remedy its defects.  *Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir. 1995) (denying motion to amend as futile "[b]ecause it is clear that the deficiency in [the] complaint could not have been overcome by amendment); *Carvalho v. Equifax Information Servs., LLC,* 629 F.3d 876, 892-93 (9th Cir. 2010) (affirming denial of leave to amend because the plaintiff could not make a prima facie case; agreeing with district court that "there was no need to prolong the litigation by permitting further amendment") (citations omitted).

## B. All Claims Against Dr. Pazaratz Should be Dismissed for Lack of Personal Jurisdiction and Failure to State a Claim

The Complaint purports to accuse Dr. Pazaratz of cybersquatting, unfair competition under Cal. Bus. Prof. Code §17200, and unfair competition under California common law.  Dkt. 1 at 16, 18, 20.  It does not allege that Dr. Pazaratz engaged in unfair competition or false designation of origin under the Lanham Act.

### 1. The Court Does Not Have Personal Jurisdiction Over Dr. Pazaratz

Under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction is proper.  *See, e.g.*, *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  "For due process to be satisfied, a defendant, if not present in the forum, must have 'minimum contacts' with the forum state such that the assertion of jurisdiction does not offend traditional notions of fair play and substantial justice."  *Id.* (citing *Int'l Shoe Co. v.*

-7-

1   *Washington,* 326 U.S. 310, 315 (1945)) (quotation omitted).  Because Dr. Pazaratz

2   is not "present in the forum" (and there are no such facts alleged in the Complaint),

3   under the first prong of the "minimum contacts" test, Plaintiff has the burden of

4   establishing that Dr. Pazaratz "has performed some act or consummated some

5   transaction within the forum or otherwise purposefully availed himself of the

6   privileges of conducting activities in the forum." *Id.*

7        The Complaint alleges no facts relating to "general jurisdiction" as to Dr.

8   Pazaratz (*i.e.* that his activities in the forum are sufficiently "substantial" or

9   "continuous and systematic") so as to justify the exercise of jurisdiction over him

10  in all matters.  *See Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1050-51 (9th

11  Cir. 1997).   Nor does the Complaint set forth facts sufficient to establish "specific

12  jurisdiction," which arises when a defendant's specific contacts with the forum

13  have given rise to the claim in question.  *Id.*

14       Instead, there is a single allegation in the Complaint relating to the alleged

15  personal jurisdiction over "Defendants," which was defined to include both

16  WeMesh and Dr. Pazaratz.  Dkt. 1 at p. 1.  The paragraph includes the most basic

17  "label" and "formulaic recitation" of jurisdiction:

18       Defendants solicit, transact and do business in California and this
         District, and a substantial part of the wrongful acts or omissions
19       complained of occurred in this District.  Defendants purposefully
         directed their activities toward WeMash in this District when they
20       engaged in the acts complained of herein, and a substantial part of the
         harm was felt in this District.
21

22  *Id.* at ¶5.  This conclusory allegation is insufficient to support a finding of

23  jurisdiction as to either party, and certainly it is not sufficient as to Dr. Pazaratz.[3]

24  *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir 1977)

25  (plaintiff "could not simply rest on the bare allegations of its complaint, but rather

26  was obligated to come forward with facts, by affidavit or otherwise, supporting

---

27  [3] This motion is directed to the lack of jurisdiction against Dr. Pazaratz, and the
    insufficiency of the allegations against Defendant WeMesh.  Defendant WeMesh
28  does not concede the venue and jurisdiction are proper in this case as to itself.

1   personal jurisdiction.").

2       The Complaint does not contain factual allegations relating to: 1) any

3   business Dr. Pazaratz individually has conducted in this District; 2) any wrongful

4   acts or omissions Dr. Pazaratz has engaged in in this District; or 3) any activities

5   Dr. Pazaratz himself has purposefully directed toward this District. *See*

6   *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004).

7   Thus, the Court should grant the motion to dismiss Plaintiff's claims against Dr.

8   Pazaratz for lack of personal jurisdiction.

9           **2.    The Complaint Also Fails to State a Claim Against Dr.**
10                   **Pazaratz, Individually.**

11       Even if Plaintiff properly alleged jurisdiction against Dr. Pazaratz, its

12   Complaint still fails to state a claim against Dr. Pazaratz.  The Complaint has not

13   alleged any conduct that Dr. Pazaratz, individually, engaged in that would give rise

14   to a claim for liability against him.[4]  Plaintiff makes one allegation specific to Dr.

15   Pazaratz, namely that he "specifically promotes that the WeMesh App is used to

16   view 'a lot of 90s music,' listen to songs by 'Kanye West,' and watch videos on

17   YouTube…."  Dkt. 1 at ¶27.  Accepting this general allegation as true, that a

18   company's president would comment that its app is used for certain purposes is

19   hardly enough under *Iqbal* and *Twombly* to state a claim against him, personally,

20   for unfair competition or cybersquatting.  This is a separate basis for dismissing the

21   Complaint as to Dr. Pazaratz.

22           **3.    Any Attempted Amendment as to Dr. Pazaratz Would be**
23                   **Futile**

24       Plaintiff has offered no justification as to why this Court might have

25   personal jurisdiction over Dr. Pazaratz.  Instead, Plaintiff simply groups him

26   together with WeMesh in the Complaint.  But "a person's mere association with a

27   ――――――――――――――
[4] Paragraph 25 alleges that "Defendant WeMesh and/or Defendant Pazaratz
28   registered, trafficked in and/or used the following domain names …" with no
distinction between either.

-9-

corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person. Rather, there must be a reason for the court to disregard the corporate form." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) (internal citations omitted).   During meet and confer communications, Plaintiff attempted to justify its claims against Dr. Pazaratz because he allegedly registered certain (but not all) of the domain names that are accused in the Complaint. *See, e.g.,* Dkt. 18 at 13.   Registration of a domain name, or even hosting a website that is alleged to be infringing, by itself, is insufficient to form a basis for personal jurisdiction against the Defendant, much less liability for cybersquatting or unfair competition. *See, e.g., Spacey v. Burgar*, 207 F. Supp. 2d 1037, 1039 (C.D. Cal. 2001) (dismissing claims against a Canadian citizen for lack of personal jurisdiction where the defendant had registered the plaintiff's name as a domain name because, "the use of an allegedly misappropriated domain name, in connection with a website generally accessible to anyone on the internet, will not support the exercise of personal jurisdiction in the name owner's state of residence."); *Alto Velo Racing Club v. Rouleur Sports Grp., LLC*, 2015 WL 5462055, at *5 (N.D. Cal. Sept. 17, 2015) ("AVRC argues that Sweeting's company's website, altovelo.com, provides a basis for personal jurisdiction over Sweeting, because in theory, California residents could buy Sweeting's company's wheels through altovelo.com and have them shipped to California… AVRC fails to distinguish between Sweeting, an individual, and Alto Velo, his wheel company. Because the company Alto Velo—and not Sweeting— operates the e-commerce website altovelo.com, altovelo.com may give rise to personal jurisdiction as to the company Alto Velo, but not to Sweeting.").  Thus, to the extent that Plaintiff seeks leave to amend its complaint as to Dr. Pazaratz, such amendment would be futile.

### C. Plaintiff Has Failed to State a Claim for Trademark Infringement or Unfair Competition Against WeMesh

Plaintiff's Lanham Act, state, and common law unfair competition claims are all based solely upon alleged infringement of Plaintiff's asserted WEMASH and WEMES trademarks. *See, e.g.,* Dkt. 1 at ¶¶46-48, ¶¶70-71, ¶¶76-77.  Because all three of Plaintiff's claims are based on trademark infringement, Plaintiff must allege the same elements for each. *See Hana Fin., Inc. v. Hana Bank,* 2011 WL 2581458, at *4 (C.D. Cal. June 29, 2011), *aff'd,* 735 F.3d 1158 (9th Cir. 2013) *aff'd,* 135 S. Ct. 907, 190 L. Ed. 2d 800 (2015).

### 1. The Complaint Fails to Allege Sufficient Facts Relating to Plaintiff's Alleged, Prior Common Law Trademarks

In order to state a claim for trademark infringement, Plaintiff must allege: 1) ownership of valid trademark rights *prior in time* to Defendants; and 2) likelihood of confusion. *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000); *Brookfield Commun's v. W. Coast Entm't*, 174 F.3d 1036, 1047 (9th Cir. 1999). This motion focuses on the first prong: Plaintiff's failure to allege sufficient facts establishing that it used the WEMASH and WEMES mark prior to WeMesh's federally-conferred constructive priority date.

As an initial matter, Plaintiff does not own a federal trademark registration for any of its alleged trademarks.  It must therefore rely exclusively on common law trademark rights, which only derive from use of the mark in commerce.  "It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark…**the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.**" *Brookfield,* 174 F.3d at 1047 (emphasis added) (cit. omitted).  More specifically, Plaintiff must allege that it has used its marks "in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark" prior to WeMesh's constructive priority

-11-

1  date.  *See Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001)

2  (explaining the burden of proving common law rights).

3      To satisfy the pleading requirements of *Iqbal* and *Twombley*, therefore,

4  Plaintiff was required to plead facts relating to how it used **each** of its purported

5  trademarks in a manner sufficiently public to confer priority of rights over

6  WeMesh (*i.e.*, when, where, and to whom it sold goods and services under its

7  trademarks).  Because the Complaint does not plead such facts, as explained

8  below, it must be dismissed.  *See, e.g., Parham v. Pepsico, Inc.*, 927 F. Supp. 177,

9  179 (E.D.N.C. 1995), *aff'd*, 86 F.3d 1151 (4th Cir. 1996) (dismissing a Lanham

10  Act claim where, *inter alia*, the "court finds that plaintiff has not satisfied the bona

11  fide commercial use requirement under the Lanham Act.").

### 2. Plaintiff Must Allege Trademark Use of WEMASH and WEMES Prior to Defendant's Constructive Priority Date of May 5, 2014

14      As Plaintiff admits, Defendant WeMesh owns a federal trademark

15  registration for the WEMESH mark.  Dkt. 1 at ¶29.  This gives WeMesh a

16  presumption that it is the owner of the mark in question, which Plaintiff has the

17  burden of overcoming.  *Sengoku Works Ltd. v. RMC Intern., Ltd.*, 96 F. 3d 1217,

18  1219 (9th Cir. 1996) ("the registrant is granted a presumption of ownership, dating

19  to the filing date of the application for federal registration, and the challenger must

20  overcome this presumption by a preponderance of the evidence.").

21      WeMesh applied to register its mark on May 5, 2014 . Dkt. 1 at ¶28.  Since

22  the application matured into a federal registration (*id.* at ¶29), WeMesh has a

23  constructive priority date of May 5, 2014.  15 U.S.C. §1057(c) ("the filing of the

24  application to register such mark shall constitute constructive use of the mark,

25  conferring a right of priority, nationwide in effect, on or in connection with the

26  goods or services specified in the registration against any other person…");

27  *Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F. Supp. 2d 1132, 1141

28  (C.D. Cal. 2007) ("The fact that the application was initially filed on an intent to

-12-

use basis does not alter the fact that the 'constructive use' date of first use is the date that the trademark application was filed.") (citing *CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 629 (9th Cir. 2007) ("as long as an applicant's mark is eventually granted registration on the principal register… the filing of an intent to use application **constitutes constructive use of the mark, conferring a right of priority, nationwide in effect**.") (emphasis added).

Accordingly, to survive this motion, Plaintiff must allege *sufficient* facts demonstrating use of WEMES and WEMASH as trademarks, in commerce, prior to May 5, 2014. *See, e.g., Zirco Corp. v. Am. Tele. & Tele. Co.*, 21 U.S.P.Q.2d 1542, 1544 (TTAB 1991) (dismissing opposition to intent-to-use application based on a claim of common law priority because the intent-to-use constructive use provision was intended in part "to prevent a third party from acquiring common law rights in a mark after the filing date of the intent-to-use application").

Moreover, where the other party (WeMesh) owns a federal registration, the party claiming prior common law rights (Plaintiff) must establish the geographic scope of its use. *Wine Grp., LLC v. L. & R. Wine Co.*, 2012 WL 3962500, at *16 (E.D. Cal. Sept. 10, 2012)*; see also Credit One Corp. v. Credit One Financial, Inc.*, 661 F. Supp. 2d 1134, 1138 (C.D. Cal. 2009) ("A party asserting common law rights must not only establish that it is the senior user, it must also show that it has 'legally sufficient market penetration' in a certain geographic market to establish those trademark rights." (quoting *Glow Indus. Inc. v. Lopez*, 252 F.Supp.2d 962, 983 (C.D. Cal. 2002)).  That is, in part, because the constructive priority date "freezes" any use that the alleged prior user made as of that date.  *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 762 (9th Cir. 2006).  The Complaint fails to allege sufficient facts on any of these threshold issues.

### 3.   Plaintiff's Allegations of Prior Trademark Use are Legally Insufficient to Establish Common Law Priority over Defendants

Plaintiff's Complaint is deficient in terms of alleging actual trademark use.

-13-

Plaintiff has not alleged when, specifically, it first sold goods or services under either the WEMASH or WEMES mark. In describing its business, Plaintiff says that it "designs, creates, develops, manufacturers, promotes, provides *and/or* distributed innovative software, web-based platforms and applications related to multimedia, videos, entertainment, sports, music, popular culture and more, *as well as related services*," and has used its alleged marks in connection with such services. Dkt. 1 at ¶7, 11 (emphasis added). Plaintiff clarifies, however, that its "goods and services" are in actuality ***an app*** "that allows users to access premium video content, which can be edited and integrated with text, graphics and other multimedia content for posting, linking and sharing online and across various social media and communications platforms. ('Wemes App')." *Id.* at ¶8. Plaintiff does not allege that it sells any other goods and services under the alleged marks.

Plaintiff has not alleged when the "Wemes App" (as defined at Dkt. 1, ¶8) went on sale, was offered to the public, or was first made available in any app store such as the iTunes App Store or Google Play. *See* Dkt. 1 at ¶9. Although Plaintiff alleges that it "promotes, advertises, and markets the Wemes App," it does not state when it first began any of those activities. *Id.* at ¶10. Given that the Wemes App is all that Plaintiff alleges to have offered under its trademarks, the failure to allege a date of first use, and specifically to allege a date of first use prior to Defendants, is telling.[5]

Faced with the fact that its Wemes app was only recently launched, Plaintiff cobbles together, in general and vague terms, certain pre-sale activities in an attempt to allege trademark priority over Defendants. Dkt. 1 at ¶¶12-16. Courts have recognized that pre-sales activities *may* be sufficient if "the totality of one's prior actions, taken together, can establish a right to use the trademark." *Chance,* 242 F.3d at 1159. For example, in *Chance,* the defendant "began a public relations

---

[5] As stated in Section IIA above, Plaintiff's app was not launched until September 16, 2015, and to this date has not appeared on Plaintiff's website.

1   campaign," "sent out brochures to potential customers," "conducted interviews

2   with major newspapers," and "marketed to potential customers…through a slide

3   presentation," which were sufficient to demonstrate trademark use because the

4   activities were followed within six months by actual sales of goods or services

5   under the mark. *Id.* On the other hand, preparatory activities, or marketing goods

6   and services without actually selling the product, and without a substantial impact

7   on the public, do not establish trademark rights. *See id.* (mailing out 32,000 post

8   cards to potential customers was insufficient to establish trademark rights when it

9   led to only 180 calls to plaintiff's phone number and no evidence of customers

10  signing up for plaintiff's services); *Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d

11  1228, 1235 (C.D. Cal. 2007) (defendant did not "plead[] particular facts that would

12  establish Hana Bank's superior legal rights in the 'HANA' mark" when it merely

13  alleged that it "advertised [the mark] in connection with financial services");

14  *Mystique, Inc. v. 138 Int'l, Inc.*, 375 F. App'x 997, 999 (11th Cir. 2010)

15  (communications with suppliers were insufficient, as a matter of law, to establish

16  trademark priority); *T.A.B. Sys. v. Pactel Teletrac*, 77 F.3d 1372, 1376 (Fed. Cir.

17  1996) (a press release, brochures, and "press kits" distributed to some potential

18  customers were insufficient to establish common-law priority because, "activities

19  claimed to constitute analogous use must have *substantial impact on the*

20  *purchasing public*") (emphasis added).

21         The Complaint's allegations fall far short of demonstrating the type of use of

22  *either* the WEMASH or WEMES marks that would confer common law priority to

23  Plaintiff.   The Complaint makes the following general and vague allegations in

24  support of its claim of trademark use prior to WeMesh, all tied to a date range

25  "beginning as early as 2009."  There is no distinction made as to which activities

26  where made when, *i.e.* whether one activity occurred in 2009, and others occurred

27  in 2015:

28

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 2:15-CV-8719 JFW (JPRx)

- Plaintiff has owned and operated the domain name wemash.com since November 2005 and "uses the WeMash Domain to communicate with its customers and advertise positions available with the company." (Dkt 1 at ¶12).

- Since at least as early as 2009, Plaintiff has used the WEMASH mark "in connection with its business," for example, "principals of WeMash have actively engaged in developing, advertising and marketing the WeMash Goods/Services in connection with the WEMASH mark, including but not limited to meetings with investors and others to develop WeMash Goods/Services that are marketed, offered and/or distributed under the WEMASH mark." *Id.* at ¶14. The Complaint does not indicate that WEMASH branded goods and services were actually available for purchase or use during that time period.

- Plaintiff "used the WEMASH mark in connection with the development and promotion of an extensive library collection of video content **owned and controlled by the WeMash principals**, for use on or in connection with web platforms, apps, software and/or related multimedia and entertainment products and services." (*Id.*) (emphasis added)

- Plaintiff "has continued to expand the products and services offered under the WEMASH mark, expanding its portfolio to include, without limitation, various entertainment services, videos and information in the fields of music, sports and entertainment over the Internet, and via apps and other distribution platforms." (*Id.* at ¶ 15).

*First*, the ownership of a domain name is insufficient to establish common law priority. *Brookfield*, 174 F.3d at 1051 (while registration of a domain name may technically be "use" of a mark, it "does not in itself constitute 'use' for purposes of acquiring trademark priority"). The Complaint does not say when the "WeMash" domain name was actually first used to communicate with customers. In other words, "owning" and "operating" a domain name in 2005 does not mean it was used at that time. The second allegation is framed in the present: that Plaintiff currently "uses" its domain name to communicate with customers and advertise jobs. Dkt. 1.at ¶12. The Complaint does not (1) allege that Plaintiff's goods or services, or the "Wemes App," were ever made available on its website; (2) indicate when the domain name was first used (if at all) to offer goods or services under the WEMASH mark, and is silent altogether as to the WEMES mark. In any event, these activities do not constitute trademark use. For example, in *Brookfield, 174 F.3d at 1052-53*, the court found that registering a domain name and sending

-16-

1  out email correspondence to lawyers and "a few customers" was insufficient to

2  establish use in commerce.  Likewise, in *The Pnc Fin. Servs. Grp., Inc. v. Ashe,*

3  *2013 WL 5820850, at \*6 (TTAB Oct. 15, 2013),* the Trademark Trial and Appeal

4  Board found that the applicant could not establish common law priority to defeat

5  opposer's priority date through activities such as registering a domain name,

6  putting up a website with a landing page describing an app, registering social

7  media accounts, sending out an email announcing the imminent launch of its app,

8  and attending a trade show in the company's name – without evidence of offering

9  any services under the name.

10      Accordingly, the vague allegation that Plaintiff's website was, at *some* point,

11  used to communicate with customers or advertise jobs is insufficient to show use

12  of the WEMASH or WEMES marks, *on goods or services*, in 2009, or prior to

13  May 2014.  This allegation is thus insufficient to create in the minds of the public

14  an association between the marks WEMASH and/or WEMES and Plaintiff's goods

15  and services, and even if taken as true, would not establish common law priority of

16  rights.

17      ***Second***, the Complaint does not indicate whether and which WEMASH

18  branded goods and services were actually available for purchase or use during the

19  2009-14 time period, and again, is silent as to any WEMES-branded goods or

20  services.  Plaintiff's alleged use of its mark "in connection with its business" (Dkt.

21  1 at ¶14) is too vague to meet the *Iqbal* and *Twombley* standard of plausibility.

22  Such a description is consistent with Plaintiff's principals using the name in

23  meetings amongst themselves – without ever disclosing it publicly – or as a

24  company name (not as a trademark on goods or services).  Although the Complaint

25  adds examples of what use "in connection with its business" means, those activities

26  would not support a finding of common law trademark priority, as explained

27  below.

28      Plaintiff's examples of its use "in connection with its business" are likewise

-17-

insufficient to establish common law trademark use of the WEMASH or WEMES
marks.  For example, that Plaintiff allegedly used the WEMASH mark with
"investors" (which could include the company's principals) is not use with the
"public."  The Complaint does not allege that investors were aware of the
trademarks – Plaintiff only alleges that the meetings were to "develop" goods and
services.  *Id*. at ¶14.  Plaintiff does not allege any facts relating to the size, specific
date, or frequency of those meetings from which one could plausibly infer that the
activities were sufficient to constitute public trademark use.  Plaintiff's allegations
do not plausibly permit an inference that such meetings created an association in
the mind of the consuming public between Plaintiff's alleged marks and its goods
and services.  *See Selfway, Inc. v. Travelers Petroleum, Inc.,* 579 F.2d 75 (C.C.P.A.
1978) (distribution of brochure to potential investors, even when some were also
potential customers, was not trademark use because, "The use of SELFWAY in the
brochure was not so pervasive, nor was the circulation of the brochure so
widespread, as to permit an inference of" an association in the mind of the public
between the mark and services).  Accordingly, this vague and general allegation,
even if taken as true, is insufficient to confer common law trademark priority for
the WEMASH mark (and does not at all relate to the WEMES mark).

**Third**, the act of "develop[ing] a library of such video content" (Dkt. 1 at
¶14) is not use in commerce of the WEMASH or WEMES trademarks.  Just as the
underlying effort to develop and program an app is insufficient to confer trademark
rights, acquiring rights to videos that are accessible through the app is likewise
insufficient.  As with the others, nothing in this allegation, even if taken as true,
establishes any pre-2014 trademark activities that would have a "substantial impact
on the purchasing public."  *See T.A.B. Sys.,* 77 F.3d at 1376.

**Fourth**, that Plaintiff has over time "expanded" its products and services
under the WEMASH mark (Dkt. 1 at ¶15) says nothing about its trademark use
prior to May 2014.  It does not explain how those services have been offered or

-18-

1  how the public would have become aware of them.  Thus, this allegation, like the

2  others, is insufficient to provide Plaintiff with a basis to claim common law

3  trademark priority.

4                              *      *      *

5          In the face of Defendants' WEMASH May 2014 nationwide constructive

6  priority date, *Plaintiff* carries the burden to demonstrate the geographic scope of its

7  alleged prior trademark use: it only would own rights where it could demonstrate

8  prior marketplace penetration.  *See Wine Grp., LLC v. L. & R. Wine Co.*, 2012 WL

9  3962500, at *16 ; *Credit One Corp. v. Credit One Financial, Inc.*, 661 F.Supp.2d

10  at 1138 ("A party asserting common law rights must not only establish that it is the

11  senior user, it must also show that it has 'legally sufficient market penetration' in a

12  certain geographic market to establish those trademark rights." (quoting *Glow*

13  *Indus. Inc. v. Lopez*, 252 F.Supp.2d at 983.  Because the filing of a trademark

14  application freezes the geographic scope of the prior user's claim Plaintiff can only

15  rely on the marketplace penetration it has alleged prior to May 2014.  *See*

16  *Quiksilver, Inc.*, 466 F.3d at 762.  The Complaint contains no allegations indicative

17  of *any* geographic use or market penetration whatsoever.

18          In *Wine Grp.*, 2012 WL 3962500 at *18-20, the court found that defendant's

19  allegations of sales of wine in a "tasting room" in Lancaster, Pennsylvania, without

20  other evidence of commercialization of its alleged trade dress, was insufficient, as

21  a matter of law, to establish marketplace penetration prior to the plaintiff filing its

22  trademark application and "freezing" the defendant's geographic scope.  In *Credit*

23  *One Corp. v. Credit One Financial, Inc.*, 661 F.Supp.2d at 1138-39, the court

24  denied plaintiff's motion for preliminary injunction where plaintiff's allegations

25  that it "receives payment from customers in [Arizona and North Carolina],

26  maintains business licenses in both states, and asserts that it continued to do

27  business in both states," was insufficient to support a finding of marketplace

28  penetration in those states.

-19-

As explained, there are no facts in the Complaint relating to the scope of Plaintiff's alleged pre-2014 use of the WEMASH mark, and Plaintiff does not even attempt to state any allegations relating to its pre-2014 use of the WEMES mark – let alone that it achieved marketplace penetration in any geographic area.   The Complaint does not allege the number of customers who have downloaded the "Wemes" app.  While Plaintiff claims, "The Wemes App has been well received by the public: it currently has a rating of 4.5 out of 5 stars on Apple, Inc.'s ("Apple") App Store (see https://itunes.apple.com/us/app/wemes-create-sharevideo-memes/id1023485444?mt=8)," Plaintiff fails to inform the Court that the app only had *16* reviews as of the date Plaintiff filed its complaint (Peterson Decl. at ¶4).

In sum, Plaintiff's allegations fail to meet the pleading standards under *Iqbal* and *Twombley*.  None of the amorphous activities alleged in the Complaint relate to the market penetration of Plaintiff's alleged trademark use.  There is no allegation of marketplace penetration in any geographic area, let alone nationwide market penetration.  Accordingly, even if Plaintiff's allegations of common law trademark use were sufficient (which they are not), Plaintiff cannot state a plausible claim because it has not alleged marketplace penetration in any geographic area.  The Court should dismiss Claims I, III, V, and VI of the Complaint.[6]

### 4.   Leave to Amend Should Be Denied as Futile

Although Plaintiff attempts to hide behind the vague and general allegations

---

[6] Count III seeks cancellation of the WEMESH registration, but without trademark priority, Plaintiff has no standing to seek cancellation. *See Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 332 (S.D.N.Y. 2008) ("[W]hen a plaintiff has no right to use a name shown in a registered trademark of a defendant, that plaintiff has no standing to seek cancellation of the trademark."); *see also* 6 McCarthy on Trademarks and Unfair Competition § 32:54 (4th ed.) (Plaintiff would not have standing to bring only a claim for cancellation because, "If one could file suit in federal court solely for cancellation of a registration, this would undercut and short-circuit the power of the Trademark Board to consider such cases.")  Thus, Count III fails with the rest.

of the Complaint, the publicly-available record indicates that Plaintiff's first actual use of WEMASH and WEMES as trademarks, on goods and services, was not until well after May 2014, and that leave to amend would therefore be futile:

- WeMash was incorporated in October 2014 (Peterson Decl., Ex. 2)
- Plaintiff's website and social media accounts indicate that Plaintiff was founded in October 2014 (Peterson Decl., Ex.1).
- Plaintiff launched its WEMES app only three months ago, on September 16, 2015 (*Id.,* Ex.3)
- Between August 2014 and November 2015, Plaintiff's www.wemash.com domain name provided only a landing page with the name of the company, and no information as to the nature of any mobile apps for sale or any services it offered under the WEMASH or WEMES marks. (*Id.* at 5-6).
- Prior to that date, the website was parked. To this day, the website offers no information at all as to Plaintiff's goods or services. *Id.*
- Plaintiff filed applications for the WEMASH and WEMES marks on an "intent to use" basis on June 25, 2014 for WEMASH, and June 8, 2015 for WEMES. Dkt. 1-1 at 3.

In seeking leave to amend, Plaintiff may attempt to aggrandize certain internal development or investor activities, but those activities would be insufficient to establish market penetration or geographic scope of use. Plaintiff would be hard-pressed to satisfy its Rule 11 obligations by alleging trademark use of the WEMASH and WEMES marks years prior to when it set up its web page or released the Wemes App. For this reason, the Court should deny Plaintiff leave to amend, unless Plaintiff can state specific allegations of trademark use prior to May 2014, including allegations relating to market penetration and geographic scope of use, that would meet the thresholds established in the above legal authorities.

### D. Plaintiff Has Failed to State a Claim for Cybersquatting Against Defendants

If the Court finds the Complaint fails to allege trademark priority, then

-21-

1   Plaintiff's cybersquatting claim must also fail. *New World Solutions, Inc. v.*
2   *NameMedia, Inc.*, 2015 WL 8958390, at \*22 (S.D.N.Y. Dec. 15, 2015) ("A
3   threshold requirement of the ACPA is that the plaintiff is "the owner of a mark.").
4   Notwithstanding, the cybersquatting claim fails for several additional reasons.

### 1.    Plaintiff's Conclusory Allegations of "Bad Faith Intent to Profit" Are Insufficient to State a Claim for Cybersquatting

7       "[C]ybersquatting occurs when a person other than the trademark holder
8   registers the domain name of a well-known trademark and then attempts to profit
9   from this by either ransoming the domain name back to the trademark holder or by
10  using the domain name to divert business from the trademark holder to the domain
11  name holder." *Bosley Medical Inst. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005)
12  (cit. omitted). "A person shall be liable in a civil action by the owner of a mark ...
13  if, without regard to the goods or services of the parties, that person (i) has a bad
14  faith intent to profit from that mark ...; and (ii) registers, traffics in, or uses a
15  domain name [that is confusingly similar to another's mark or dilutes another's
16  famous mark]. *Id.* (quoting 15 U.S.C. § 1125(d)(1)(A) (2004)) ("ACPA").

17      "The ACPA is not an all-purpose tool designed to allow the holders of
18  distinctive marks the opportunity to acquire any domain name confusingly similar
19  to their marks. The requirement of bad faith intent to profit imposes an important
20  limit that cabin's the statute's scope and... leaves untouched conduct that might
21  annoy or frustrate mark holders, but that Congress shielded from liability by
22  enumerating indicia of the sort of bad faith it had in mind." *Acad. of Motion*
23  *Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-03738 AB (CWx), 2015
24  WL 5311085, at \*25 (C.D. Cal. Sept. 10, 2015) (int. citations omitted). Ignoring
25  this admonition and its pleading obligations under *Iqbal*, Plaintiff instead relies on
26  the most conclusory and non-specific allegations of cybersquatting. Plaintiff
27  alleges generally that "Defendants" own a number of domain names without
28  stating which domain names in question are owned by which Defendant. Plaintiff

-22-

1  does not state *when* each domain name was registered, or by whom.

2      In violation of *Iqbal*, Plaintiff simply recites some of the elements of the

3  ACPA by stating that "Defendant WeMesh and/or Defendant Pazaratz registered,

4  trafficked in and/or used the WeMesh Domains as described herein with a bad faith

5  intent to profit from the WEMASH mark."  Dkt. 1 at ¶53.  Tellingly, Plaintiff does

6  not allege any facts stating that (or how) Defendants *knew* about Plaintiff's alleged

7  trademark rights, *let alone* facts giving rise to an inference of "bad faith intent to

8  profit" on the domain names in question.[7]  *See Flat Rate Movers, Ltd. v. FlatRate*

9  *Moving & Storage, Inc.*, 104 F. Supp. 3d 371 (S.D.N.Y. 2015) (finding no

10 cybersquatting as a matter of law, where, "Plaintiff does not even assert that

11 Defendants had knowledge of Plaintiff's marks before Defendants purchased

12 "flatratemovers.com" in 2001.  Even though Defendants had such knowledge when

13 registering subsequent domain names, that fact is insufficient to show that

14 Defendants 'squatted' with bad faith intent.").[8]  For this separate reason, the Court

15 should dismiss Plaintiff's cybersquatting claim against all of the domain names.

16          **2.    Separately, Plaintiff's Cybersquatting Claim Fails as to the**
           **wemesh.com Domain Name because it was Registered in**
17         **May 2002.**

18     Beyond Plaintiff's failure to plead facts indicative of Defendants' knowledge

19 
_____

20 [7] The court in *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 351 (S.D.N.Y. 2014),
   confronted with similar conclusory allegations, dismissed the claim, stating "the
21 allegations in the Complaint regarding the defendants' use of the domain name
   simply show another aspect of the alleged trademark infringement, rather than an
22 attempt to profit specifically from 'squatting' on the domain name with bad faith
   ….  These allegations do not suggest that defendants perpetrated the core activities
23 that threaten to result in the paradigmatic harm that the ACPA was enacted to
   eradicate, that is, the proliferation of cybersquatting—the Internet version of a land
24 grab.")
   [8] Further, Plaintiff's allegations of "bad faith" or an improper purpose are
25 contradicted by its own allegations elsewhere in the Complaint, where it states that
   WeMesh is using the domains to advertise *WeMesh's* services. Dkt. 1 at ¶26.  This
26 is not evidence of cybersquatting.  *See Milbank Tweed Hadley & McCloy LLP v.*
   *Milbank Holding Corp.*, No. CV 06-187-RGK (JTLx), 2007 WL 1438114, at *8
27 (C.D. Cal. Feb. 23, 2007) (no bad faith intent where defendant was offering
   services at the domain, had no intent to divert customers from the plaintiff, had not
28 offered to sell the domain to plaintiff, and had not provided false contact
   information); *see also New World Solutions*, 2015 WL 8958390, at *23.

of Plaintiff's so-called pre-May 2014 trademark rights or of Defendants' "bad faith intent to profit," the law does not permit a cybersquatting claim against a domain name registered – by a defendant or another – prior to a plaintiff's alleged first use. As shown in the domain registry history for the wemesh.com domain name, of which the Court can and should take judicial notice, that name was first registered on September 25, 2002 – years before Plaintiff's imagined first use of the WEMASH or WEMES marks.  Peterson Decl. at ¶7.  As such, even though the registration of the wemash.com domain name was by another party, the Ninth Circuit has confirmed that there can be no cybersquatting when it was not originally registered in bad faith.  *See GoPets Ltd. v. Hise*, 657 F.3d 1024, 1032 (9th Cir. 2011) ("Because Edward Hise registered gopets.com in 1999, long before GoPets Ltd. registered its service mark, Digital Overture's re-registration and continued ownership of gopets.com does not violate § 1125(d)(1)); *HMS Stores, LLC v. RGM Distribution, Inc.*, 2015 WL 1299750, at *2 (C.D. Cal. Mar. 3, 2015) (dismissing a cause of action for cybersquatting where "Plaintiff asserts that Defendants recently acquired ownership of the ModernBath.com domain name and that this acquisition was after the first use and registration of the MODERN BATHROOM mark. However, Defendants submit the registration record showing that the ModernBath.com domain was first registered on January 18, 2005–before the MODERN BATHROOM mark was first used.").

### 3. Plaintiff Cannot Assert That Defendants' Non-U.S. Domain Names Were Registered in Violation of the ACPA

Two of the accused domain names, www.wemesh.ca and www.weme.sh, were registered through Canada and St. Helena domain name registrars, respectively.  Defendants are aware of no authority allowing Plaintiff to bring a claim under the ACPA with respect to domain names registered by a foreign entity, in these non-U.S. territories, through foreign registration processes.  Here, the extraterritorial application of the ACPA to prevent a Canadian company from

-24-

using a Canadian domain name (.ca) would conflict with Canadian law; if a third

party has established trademark rights in a mark in Canada (like WeMesh), a U.S.-

based plaintiff using the same mark in the U.S. cannot shut down that company's

Canadian web portal through a U.S. lawsuit, just as that plaintiff would be unable

to enjoin use in Canada relying on U.S. rights.[9]

Plaintiff has not brought a dispute against those domains in the proper forum

and cannot use the ACPA to serve as a dispute for any domain name, in any

country code. For this *additional* reason, the claims against Defendants based on

the weme.sh and wemesh.ca domains should be dismissed.

## IV.    CONCLUSION

For all of the above reasons, the Court should dismiss Claims I-III, V and VI

of the Complaint, without leave to amend.

Dated:  December 28, 2015        PILLSBURY WINTHROP SHAW PITTMAN LLP
                                 BOBBY GHAJAR
                                 MARCUS D. PETERSON


                                 By:___/s/ Bobby A. Ghajar_____
                                    Bobby Ghajar
                                    Marcus D. Peterson
                                 Attorneys for Defendants WEMESH, INC. and
                                 MICHAEL PAZARATZ

---

[9] Canadian domain registrations (.ca registrations) are governed by the Canadian Internet Registration Authority (CIRA). CIRA's policies (available at https://cira.ca/sites/default/files/attachment/policies/cprregistrants-en.pdf) include "Presence Requirements." These requirements allow registration of .ca domains by only certain people or entities, present in Canada, *e.g.*, citizens of Canada, permanent residents, corporations, or partnerships. CIRA also has its own domain dispute policies (available at https://cira.ca/sites/default/files/attachment/policies/cdrppolicy_-_en.pdf), which require that a Complainant must satisfy the Presence Requirements and can only bring a complaint that "relates to a trade-mark registered in CIPO and the Complainant is the owner of the trademark." Likewise, the .sh domain is owned by the Island of St. Helena and managed by the Internet Computer Bureau PLC. Its dispute resolution policy states, "Any third party may bring an claim against the Applicant arising out of or in connection with the registration or use of a domain name or any other listing information **before a WIPO ("World Intellectual Property organisation") Arbitrator** in accordance with the WIPO Expedited Arbitration Rules, As Adapted." (http://www.nic.sh/dres.html) (emphasis added).