1    Manatt, Phelps & Phillips, LLP
     SHARI MULROONEY WOLLMAN (Bar No. CA 137142)
2    E-mail:  SWollman@manatt.com
     JESSICA A. WOOD (Bar No. CA 269562)
3    E-mail:  JWood@manatt.com
     11355 West Olympic Boulevard
4    Los Angeles, CA  90064-1614
     Telephone:  (310) 312-4000
5    Facsimile:  (310) 312-4224

6    *Attorneys for Plaintiff*
     WeMash, Inc.
7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        WESTERN DIVISION

11

| 12 | WEMASH, INC., a Delaware corporation, | No.  2:15-cv-08719-JFW (JPRx) |
|---|---|---|
| 13 | | **FIRST AMENDED COMPLAINT FOR:** |
| 14 | Plaintiff, | |
| 15 | vs. | 1. FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125(A) |
| 16 | WEMESH INC., an Ontario, Canada corporation; and Michael Pazaratz, an individual, | 2. FEDERAL CYBERSQUATTING, 15 U.S.C. § 1125(d) |
| 17 | | |
| 18 | Defendants. | 3. CANCELLATION OF FEDERAL TRADEMARK REGISTRATION, 15 U.S.C. §§ 1119, 1052(d) AND 1064 |
| 19 | | |
| 20 | | 4. DECLARATORY JUDGMENT OF NO TRADEMARK INFRINGEMENT, 28 U.S.C. §§ 2201 AND 2202 |
| 21 | | |
| 22 | | |
| 23 | | 5. CALIFORNIA STATUTORY UNFAIR COMPETITION, CAL. BUS. PROF. CODE §17200 |
| 24 | | |
| 25 | | 6. CALIFORNIA COMMON LAW UNFAIR COMPETITION |
| 26 | | |
| 27 | | **DEMAND FOR JURY TRIAL** |
| 28 | | |

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

315863740.3                                          FIRST AMENDED COMPLAINT

Plaintiff WeMash, Inc. ("WeMash" or "Plaintiff") states the following for its First Amended Complaint against Defendants WeMesh Inc. ("WeMesh") and Michael Pazaratz ("Pazaratz") (collectively, "Defendants"), upon actual knowledge with respect to itself and its own acts, and information and belief as to other matters.

## PARTIES

1.    Plaintiff WeMash is a Delaware corporation having a principal place of business located at 312 Venice Way, Venice, California, 90291.

2.    WeMash is informed and believes, and on that basis alleges that Defendant WeMesh is an Ontario, Canada corporation having a principal place of business located at 340 Brookview Court, Ancaster L9G4C2 Canada and/or 130 Weber Street West, #200, Kitchener, Ontario N2H Canada.

3.    WeMash is informed and believes, and on that basis alleges that Defendant Pazaratz is a citizen of Canada, who resides in Ontario, Canada.

## JURISDICTION AND VENUE

4.    This Complaint arises under the laws of the United States, specifically the Declaratory Judgments Act, 28 U.S.C. §§2201 and 2202, and the trademark laws of the United States, 15 U.S.C. §§ 1114 *et seq.* and 1125, and is based on the actual justiciable controversy between WeMash and Defendant WeMesh.  This Court has original jurisdiction of this action under 15 U.S.C. §1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 because the claims are so related as to form part of the same case or controversy.

5.    This Court has personal jurisdiction over Defendants because Defendants solicit, transact and do business in California and this District, and a substantial part of the wrongful acts or omissions complained of occurred in this District. Defendants purposefully directed their activities toward WeMash in this District when they engaged in the acts complained of herein, and a substantial part of the harm was felt in this District.

6.   Venue is proper in the United States District Court for the Central District of California under  28 U.S.C. §§ 1391(b) and (c).

## FACTUAL BACKGROUND

### WeMash's Proprietary Goods, Services and Intellectual Property

7.   WeMash is an innovative multimedia platform created by well-known entrepreneur and multi-platinum composer, music producer, film producer, and author Quincy Jones, III (son of legendary record producer, conductor, arranger, composer, musician, television producer, film producer, instrumentalist, magazine founder, entertainment company executive, and humanitarian Quincy Jones, Jr.). Mr. Jones was very active in the entertainment and music industries starting in the late 1980's and continuing through the 1990's, during which time he produced music for some of the most famous artists of the day, including but not limited to: Dr. Dre, Tupac Shakur, Ice Cube, Kanye West, Lionel Richie, Will.I.Am, and Prince.  Following the Internet "bubble" in the late 1990's and early 2000's that popularized the Internet, Mr. Jones was inspired by music sampling and audio mashups (*i.e.* recordings created by combining data from two or more different sources), which had just begun to permeate the Internet.  For example, one popular music mashup website, WeMix, was founded in 2007, and was part of the inspiration for the name WeMash.  Mr. Jones saw an opportunity to translate the audio mashup concept to the burgeoning online video space as well, and invented the WeMash platform to respond to this demand.

8.   Shortly thereafter, on May 21, 2008, WeMash acquired the www.wemash.com domain name (the "WeMash Domain").  According to public WhoIs records, the WeMash Domain was created on November 20, 2005.  WeMash has owned and operated the WeMash Domain since May 21, 2008, and uses the domain to communicate with its customers, advertise its products and services, and provide a WeMash blog showcasing WeMash mashup videos and more.

9.   The WeMash platform is essentially a suite of entertainment-related products and services (the "WeMash Goods/Services").  At the core of the WeMash Goods/Services is one of the world's premier collections of premium, high-quality video content, which features rare and unique celebrity clips, rap, hip-hop, R&B, and pop music footage, pop-culture phenomena, urban culture, and more (the "WeMash Content").  As early as 2008, WeMash began developing the WeMash Goods/Services, including but not limited to the WeMash Content.  Since its inception, and continuing to the present, the WeMash Goods/Services have combined the premium WeMash Content with various related software and application ("app") development services, production services, and other entertainment and technology products and services, which have evolved over time in response to major technological developments over the last decade.

10. WeMash often utilizes the WeMash Content in connection with the WeMash Goods/Services in a number of ways.  For example, WeMash partners with content owners, including but not limited to movie studios, news organizations, sports entities, music labels/publishers, and documentarians, and utilizes the best and latest frameworks and tools, to ensure that the WeMash Goods/Services delivered to customers are of the highest quality and best value.

11. As part of the WeMash Goods/Services, since at least as early as 2010, WeMash has created, developed, manufactured, promoted, provided, distributed, and/or licensed the WeMash Content to celebrities, content producers, editors, artists and developers, among others.  As just one example, in 2010 WeMash used a portion of the WeMash Content to create a repository which was distributed to and/or accessed by celebrities, film producers, editors, and others who used the WeMash Content in the repository to create audio/visual "mashup" videos.  Some of the resulting mashup videos were posted on social media websites such as Vimeo and YouTube, and/or were used for other purposes.

12. Further, since at least as early as 2013, WeMash has been actively soliciting content owners in the entertainment industry to contribute additional premium video and audio content to the WeMash Content.  WeMash has also been developing cutting-edge technology to provide users with the best tools to search, identify, preview, access, and utilize the WeMash Content.  During this period, certain of the WeMash Content has been distributed to and/or accessed by additional well-known content creators, producers, editors and others, and used to create audio/visual mashup videos.  As just one example, in April 2014, a popular content creator accessed certain of the WeMash Content and used a video featuring an interview with Grammy-award winning artist Kanye West (who has sold more than 32 million albums and has over 100 million digital downloads, and has been named as one of *Time* magazine's 100 most influential people in the world) to make a video mashup.  Some additional examples of mashup videos made using the WeMash Content, which have been strategically rolled out to the public, may currently be found online at http://blog.wemash.com/, and on popular social media websites such as YouTube.

13. Among other WeMash Goods/Services, WeMash designs, creates, develops, manufactures, promotes, provides, and/or distributes innovative software, web-based platforms and apps related to multimedia, videos, entertainment, sports, music, popular culture, and more.  For example, WeMash is the creator, owner and provider of an app that allows users to access premium video content, which can be edited and integrated with text, graphics and other multimedia content for posting, linking and sharing online and across various social media and communications platforms (the "Wemes App").  The Wemes App supplies users with a collection of video content from the WeMash Content, including but not limited to a variety of celebrity interviews and performances featuring pop culture icons.  Users can customize video clips and other media using various tools provided via the Wemes App to add text, audio recordings, graphics, and more.  Users' resulting multimedia

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

315863740.3

5

FIRST AMENDED COMPLAINT

projects, sometimes called video memes or mashups, can be posted on social networks, transmitted directly to others via text message or email, and easily shared in a variety of other ways.  The Wemes App has been well-received by the public: it currently has a rating of 4.5 out of 5 stars on Apple, Inc.'s ("Apple") App Store (*see* https://itunes.apple.com/us/app/wemes-create-share-video-memes/id1023485444?mt=8).

14. WeMash's Wemes App is available for download on, and has been downloaded from at least Apple's App Store.

15. In addition, WeMash promotes, advertises and markets the Wemes App on a variety of websites and social media networks nationwide, including but not limited to Instagram, LinkedIn, Facebook, Twitter, and Vine.  WeMash encourages users to share their own video memes, mashups and other multimedia content created with the Wemes App by using the hashtags #WEMES and #GotWEMES on social media.

## WeMash's Selection and Use of Its Trademarks

16. WeMash is the owner of trademarks which it uses in connection with the WeMash Goods/Services and/or Wemes App including, but not limited to WEMASH™, WEMES™ and WeMash's proprietary W & Design (crown) ™ logo (collectively, the "WEMASH Marks").

17. Since at least as early as 2009, and continuously to the present, WeMash has used the distinctive WEMASH mark in connection with its business, including but not limited to its innovative and high-quality WeMash Goods/Services.

18. By way of example and without limitation, beginning as early as 2009, and continuously to the present, the principals of WeMash have actively engaged in developing, advertising and marketing the WeMash Goods/Services in connection with the WEMASH mark.  For example, beginning at least as early as 2009, and continuously to the present, the WeMash principals met with third-party investors, premium content owners, well-known content creators, producers, developers,

celebrities, artists, advertising agencies, well-known consumer product brands, high-level executives at movie studios, and others in the entertainment industry, to promote, develop and/or distribute WeMash Goods/Services that are marketed, offered and/or distributed under the WEMASH mark.  These extensive contacts created an association between the WEMASH mark and the WeMash Goods/Services in the minds of an appropriate segment of the entertainment industry and the relevant consumer market for the WeMash Goods/Services.

19. Further, prior to May 2014, WeMash was in contact regarding exploitation and use of the WeMash Goods/Services with individuals and entities that were located in, operating from, and/or headquartered in some of the largest entertainment markets in the world, including Los Angeles, New York, San Francisco, Chicago, Nashville, the United Kingdom, and Spain.  Since that time, the WeMash Goods/Services have expanded their reach to Sweden, other locations in the United States, and elsewhere, including Australia, France and Japan.  As a result of these contacts, WeMash's WEMASH Marks have achieved market penetration within am appropriate segment of the entertainment industry  in the relevant markets, including the United States.

20. From early 2009 and continuing to the present, WeMash has continued to expand the products and services offered under the WEMASH Marks, expanding its portfolio to include, without limitation, various entertainment services, videos and information in the fields of music, sports and entertainment over the Internet, and via apps and other distribution platforms.

21. In addition, WeMash has continued to expand its family of WEMASH Marks used on or in connection with WeMash Goods/Services by creating and using a family of marks derived from its WEMASH mark, including but not limited to WEMES and the W & Design (crown) logo.  By way of example and without limitation, WeMash uses its WEMES and/or W & Design (crown) marks in

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

315863740.3

7

FIRST AMENDED COMPLAINT

1  connection with WeMash's proprietary Wemes App, as well as related goods and

2  services.

3      22. By virtue of WeMash's longstanding, prominent and continuous use, as

4  well as the extensive promotion and advertising of the WEMASH Marks, the

5  WEMASH Marks have come to be recognized by the relevant public as identifying

6  the WeMash Goods/Services and WeMash, and have become strong and distinctive

7  in the United States within the meaning of the Lanham Act.  Further, WeMash also

8  has developed valuable goodwill in the WEMASH Marks.

9      23. Moreover, favorable public acceptance and recognition has further

10  established that WeMash's WEMASH Marks have become assets of substantial

11  value to WeMash, and symbols of the high-quality and associated goodwill of the

12  WeMash Goods/Services.

13      24. In addition to the common law rights that WeMash has acquired in and to

14  WeMash's WEMASH Marks due to its longstanding, continuous and extensive use

15  of those marks, WeMash is also the owner of two (2) pending federal trademark

16  applications for its WEMASH and WEMES marks.  Printouts from the United

17  States Patent and Trademark Office ("USPTO") website evidencing these

18  applications are attached as Exhibits 1 and 2, respectively, the particulars of which

19  are summarized below:

20

21

22

| Mark and Application No. | Filing Date | Goods/Services |
|---|---|---|
| WEMASH<br><br>App. No. 86/320,744 | Filed June 25, 2014 | Class 41:  Entertainment services, namely, providing webcasts and online videos in the field of music, sports and entertainment; Providing a website featuring information in the field of music, sports and entertainment; Entertainment services, namely, providing information about music, sports and entertainment via an online network (the "WEMASH Application"). |

23

24

25

26

27

28

| Mark and Application No. | Filing Date | Goods/Services |
|---|---|---|
| WEMES<br><br>App. No. 86/654,939 | Filed June 8, 2015 | Class 9: Software and downloadable software to enable users to integrate, edit, combine, modify, enhance, create and display text, graphics, images, photos, moving pictures, music, audio, video, audio-visual materials, and other multimedia content for posting, linking and sharing through electronic messaging and transmission via a global computer network, portable and wireless networks and various platforms across multiple forms of media; Software and downloadable software to enable users to integrate, edit, combine, modify, enhance, create and display text, graphics, images, photos, moving pictures, music, audio, video, audio-visual materials, and other multimedia content that can be stored on and accessed from cloud based systems or remote network servers via a global computer network, portable and wireless networks and various platforms across multiple forms of media; Downloadable software for the integration of text, graphics, images, photos, moving pictures, music, audio, video, audio-visual materials, and other multimedia content into an interactive delivery for multimedia applications; Software and downloadable software for mobile phones, tablet computers, mobile telecommunications devices, mobile digital devices, portable devices, personal communications devices, portable media players, handheld computers and hand-held electronic devices, to send and receive electronic messages, text, graphics, images, photos, moving pictures, music, audio, video, audio-video materials and other multimedia content via global communication networks, portable and wireless networks, and various platforms across multiple forms of media; |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

315863740.3                                                                                    FIRST AMENDED COMPLAINT

| Mark and Application No. | Filing Date | Goods/Services |
|---|---|---|
| | | <u>Class 41</u>: Providing an online non-downloadable searchable database of text, graphics, still images, photos, moving pictures, music, audio, video, audio-visual materials, and other multimedia content in the fields of celebrities, news, film, politics, television, political events and affairs, sports, music, history, drama, nature and wildlife, fashion, artistic performances, beauty, science fiction and fantasy for embedding digital content into websites, social media, electronic communications, downloadable and non-downloadable digital content, electronic downloadable publications, and other digital media and design elements of others; and<br><br><u>Class 42</u>: Providing online non-downloadable software, applications and tools to enable users to integrate, edit, combine, modify, enhance, create and display text, graphics, images, photos, moving pictures, music, audio, video, audio-visual materials, and other multimedia content for posting, linking and sharing through electronic messaging and transmission via a global computer network, portable and wireless networks and various platforms across multiple forms of media; Providing online non-downloadable software, applications and tools to enable users to integrate, edit, combine, modify, enhance, create and display text, graphics, images, photos, moving pictures, music, audio, video, audio-visual materials, and other multimedia content that can be stored on and accessed from cloud based systems or remote network servers via a global computer network, portable and wireless networks and various platforms across multiple forms of media; Providing online non-downloadable software for the integration of text, graphics, images, photos, moving pictures, music, audio, video, audio-visual materials, and other multimedia content into an interactive delivery for multimedia applications" (the "WEMES Application"). |

//

//

## Defendants' Wrongful and Infringing Conduct

25. WeMash is informed and believes, and on that basis alleges that Defendant Pazaratz is one of the co-founders of Defendant WeMesh.

26. WeMash is informed and believes, and on that basis alleges that Defendant WeMesh creates, develops, manufactures, markets, distributes, displays, uses and/or sells multimedia and entertainment software and/or apps for the Apple iPhone and/or iPad, and other platforms, including but not limited to its WeMesh App (the "WeMesh App") that allows users to synchronize their mobile devices in order to watch videos together, while simultaneously communicating with each other either via text messaging or VoIP (the "WeMesh Goods").

27. WeMash is informed and believes, and on that basis alleges that Defendant WeMesh markets, distributes and/or sells the WeMesh App at least through Apple's App Store and on Google Play.

28. WeMash is informed and believes, and on that basis alleges that Defendant WeMesh advertises the WeMesh App for distribution in California and nationwide.

29. WeMash is informed and believes, and on that basis alleges that the WeMesh App is accessible by consumers in California, and that Defendant WeMesh has distributed and/or offered to distribute the WeMesh App in California and nationwide.

30. WeMash is informed and believes, and on that basis alleges that Defendant WeMesh executed an "Apple Developer Agreement" with Apple, subjecting itself to the laws of the State of California and to personal jurisdiction and venue in California.

31. WeMash is informed and believes, and on that basis alleges that Defendant WeMesh executed an "Google Play Developer Distribution Agreement" with Google Inc. ("Google"), subjecting itself to the laws of the State of California and to personal jurisdiction and venue in California.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

315863740.3

11

FIRST AMENDED COMPLAINT

32. In addition, WeMash is informed and believes, and on that basis alleges that according to public WhoIs records, Defendant Pazaratz and Defendant WeMesh, and each of them, are identified as the "owner" of the domain name weme.sh, and the "owner" address identified is 250 Pall Mall, London Ontario, Canada, which is believed to be Defendant Pazaratz's personal address ("Defendant Pazaratz's Address").  WeMash is informed and believes, and on that basis alleges that Defendants, and each of them, own and operate the website at http://weme.sh, where Defendants market, distribute and/or sell the WeMesh Goods nationwide, in this District, and to California residents.  WeMash is further informed and believes, and on that basis alleges that the domains www.wemesh.com, www.wemesh.me and www.wemesh.video automatically redirect to http://weme.sh.

33. WeMash is further informed and believes, and on that basis alleges that public WhoIs records for www.wemesh.com, www.wemesh.co, and www.wemesh.video, and each of them, identify Defendant Pazaratz as the Registrant, list Defendant Pazaratz's Address, and identify MikePaz@gmail.com as the "Registrant Email."

34. WeMash is further informed and believes, and on that basis alleges that public WhoIs records for www.wemesh.me and www.wemesh.tv, and each of them, identify Defendant Pazaratz as the "Registrant Name," and Defendant WeMesh as the "Registrant Organization."

35. WeMash is further informed and believes, and on that basis alleges that in an October 16, 2015 correspondence to Plaintiff WeMash ("WeMesh Demand Letter"), Defendant WeMesh's counsel represented that "the following domain names are also owned by WeMesh, all of which feature WEMESH as the primary brand: www.wemesh.com; www.wemesh.ca; www.wemesh.me; www.wemesh.tv; www.wemesh.co; www.wemesh.video; weme.sh; and mesh.video."

36. WeMash is further informed and believes, and on that basis alleges that the above domain names contain the word "WeMesh," which is confusingly similar to the WEMASH Marks.

37. WeMash is further informed and believes, and on that basis alleges that Defendant WeMesh and/or Defendant Pazaratz registered and/or used the domains www.weme.sh, www.wemesh.me, www.wemesh.tv, www.wemesh.co, www.wemesh.video and www.wemesh.ca as described herein in order to divert the attention of web users who are interested in Plaintiff WeMash, and drive traffic to Defendants' own site, which Defendants use to market, distribute and/or sell the WeMesh Goods, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Defendants' site;

38. WeMash is further informed and believes, and on that basis alleges that Defendant WeMesh also markets, distributes and/or sells the WeMesh Goods and/or related services nationwide, and to California residents, on a variety of websites and social media networks, including but not limited to several popular national websites run by California based companies such as Facebook (*see, e.g.* https://www.facebook.com/WeMeshInc), Twitter (*see, e.g.* https://twitter.com/WeMesh), Pinterest (*see, e.g.* https://www.pinterest.com/wemesh/), Instagram (*see, e.g.* https://instagram.com/WeMesh/), LinkedIn (*see, e.g.* https://www.linkedin.com/company/wemesh) and YouTube (*see, e.g.* https://www.youtube.com/channel/UChA-gNp_x14Ni-_vEnuK8dw).  In addition, WeMash is informed and believes, and on that basis alleges that Defendant WeMesh encourages Internet users to follow Defendant WeMesh on Twitter using the handle "@WeMeshInc".

39. WeMash is informed and believes, and on that basis alleges that promotional materials for the WeMesh App appear to feature, promote, affiliate and/or incorporate entertainment content and music videos featuring artists and

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

315863740.3

13

FIRST AMENDED COMPLAINT

musicians who live, work or own homes in the greater Los Angeles area in this District, including but not limited to Kanye West (Hidden Hills, California), Daft Punk (Beverly Hills, California), Ariana Grande (Hollywood, California), and Katy Perry (Hollywood, California), just to name a few.  *See, e.g.* https://www.youtube.com/watch?v=MYHnv7Eluow.

40. WeMash is further informed and believes, and on that basis alleges that the WeMesh App features popular music videos and other celebrity entertainment content focusing on the California-centered celebrity and entertainment industries.

41. WeMash is further informed and believes, and on that basis alleges that Defendant Pazaratz specifically promotes that the WeMesh App is used to view "a lot of 90s music," listen to songs by "Kanye West," and watch videos on YouTube (*see* http://news.slashdot.org/story/15/02/18/2054258/watch-videos-in-synch-with-fellow-ios-users-video?continuous_video=1).

42. WeMash is informed and believes, and on that basis alleges that WeMash and Defendant Pazaratz traveled to California to in or around September 2015 to market, promote and/or distribute the WeMesh App.  WeMash is further informed and believes, and on that basis alleges that during this trip to California, Defendant WeMesh, including specifically Defendant Pazaratz, met with Los Angeles-based entrepreneur, photographer, videographer, and social media pioneer, Joe Venuto, who created a promotional video for WeMesh featuring Defendant Pazaratz and the WeMesh App, which can be viewed on YouTube at https://www.youtube.com/watch?v=td-dV8gUvfo.

**Defendant WeMesh Does Not Own A Valid Trademark**

43. WeMash is informed and believes, and on that basis alleges that on or about May 5, 2014, over four years after WeMash's first use of any of the WEMASH Mark(s), Defendant WeMesh filed an intent-to-use application with the USPTO for WEMESH, Application No. 86/271,330 (the "WEMESH

Application"), for the same or related goods/and or services already offered by WeMash.

44. According to the USPTO records, Defendant WeMesh filed a statement of use with respect to the WEMESH Application on or about March 12, 2015, alleging a first use date of January 10, 2015, and U.S. Trademark Registration No. 4,757,374 was issued on June 16, 2015 (the "WEMESH Registration"), as follows:

| Mark, Application No. & Registration No. | Filing Date | Goods/Services & Alleged First Use Date |
|---|---|---|
| WEMESH<br><br>App. No. 86/271,330<br><br>Reg. No. 4,757,374 | Filed May 5, 2014<br><br>Registered June 16, 2015 | Class 9: Downloadable mobile software applications for synchronizing multimedia content with audio and text communication; Computer software for synchronizing content between mobile devices<br><br>First use: January 10, 2015 |

45. The goods that Defendant WeMesh intended to provide, and/or has provided under the WEMESH mark, including but not limited to those goods listed in the WEMESH Registration, appear to be commercially related to, confusingly similar to, and compete with the goods and services already offered by WeMash under the WEMASH Marks. In addition, it appears that the goods that Defendant WeMesh intended to provide, and/or has provided under the WEMESH mark, including but not limited to those goods listed in the WEMESH Registration are, or potentially will be, offered broadly to the same class of consumers as the consumers of WeMash's Goods/Services under the WEMASH Marks, through the same and/or overlapping channels of trade.

46. Further, Defendant WeMesh's WEMESH mark is confusingly similar to WeMash's WEMASH and WEMES marks. First, WeMash's WEMASH Mark only differs from WEMESH by one letter, namely the letter "A" is replaced by an

"E."  Likewise, WeMash's WEMES mark only differs from WEMESH by one letter, namely the "H."  Not only are "WEMASH" and "WEMES" completely arbitrary as applied to the WeMash Goods/Services, but "WEMASH" and "WEMES" are fanciful words, entitled to the strongest and most broad protection.

47. Defendant WeMesh is not licensed or authorized in any way to use the WEMASH Marks, its WEMESH mark, or any colorable imitations thereof, in connection with the manufacture, marketing, distribution, display and/or sale of multimedia and/or entertainment software and/or apps, or otherwise.

48. WeMash has been using its WEMASH mark in connection with the WeMash Goods/Services since at least 2009, well before Defendant WeMesh's alleged first use date of January 10, 2015 for WEMESH.  WeMash has been using its WEMASH mark in commerce in connection with certain of the WeMash Goods/Services since at least 2010, which predates the filing of Defendant WeMash's WEMESH Application, and is well before Defendant WeMesh's alleged first use date of January 10, 2015 for WEMESH.

49.  On December 8, 2015, WeMash filed a Petition to Cancel the WEMESH Registration with the United States Patent and Trademark Office .

50. Defendant WeMesh's marketing, distribution and/or sale of products bearing colorable imitations of the WeMash Marks used on and in connection with the WeMash Goods/Services, is likely to deceive, confuse and mislead consumers and prospective consumers into believing that the WeMesh Goods distributed by Defendant WeMesh are manufactured by, authorized by, or in some manner associated with WeMash, when they are not.  The likelihood of confusion, mistake and deception engendered by Defendant WeMesh's misappropriation of WeMash's trademarks is causing irreparable harm to the goodwill symbolized by these marks and the reputation for quality that they embody, in California and in this District. On information and belief, Defendant WeMesh continues to market, distribute

and/or sell WeMesh Goods that compete with the multimedia and/or entertainment software and/or apps created, manufactured and distributed by WeMash.

51. WeMash is informed and believes, and on that basis alleges that Defendant WeMesh willfully, intentionally and maliciously adopted and used colorable imitations of WeMash's WEMASH Marks, in connection with its WeMesh Goods, that are likely to cause confusion.

52. WeMash is informed and believes, and on that basis alleges that Defendant WeMesh and Defendant Pazaratz are and were aware of WeMash's business activities in California and this District in the music, entertainment, multimedia and technology industries.

### Defendant WeMesh's False Accusations to Social Media Providers

53. WeMash is informed and believes, and on that basis alleges that on or about October 16, 2015 Defendant WeMesh caused the WeMesh Demand Letter to be hand-delivered to a former address for Plaintiff WeMash in Studio City, California, demanding that Plaintiff WeMash "change its branding,"  abandon the WEMASH Application and WEMES Application and "immediately cease and desist from using these trademarks."  WeMash did not receive this WeMesh Demand Letter at the time, as it was sent to its former address.

54. On or about October 16, 2015, WeMash received notice from Instagram, Report No. 414553342088713, that WeMash's Instagram page, @wemesapp, was removed or access was disabled thereto, based on a complaint by Defendant WeMesh that @wemesapp allegedly infringed its trademark rights in the WEMESH mark ("the Instagram Complaint").

55. On or about October 14, 2015 WeMash received notice from Apple, Reference No. APP52056 ("the Apple Complaint"), that Defendant WeMesh had requested that "the Wemes app owned by WeMash, Inc. be removed from the Apple App store," based on allegations that "WeMash's use of the WeMash and

1   Wemes marks is infringing upon WeMesh Inc.'s trademark rights." Further, in the

2   Apple Complaint, counsel for Defendant WeMesh admitted that "[g]iven the

3   similarity in the marks themselves, the use of the marks, and the types of services

4   offered through the parties' respective applications, there is significant confusion as

5   to the source and origin of the services that WeMesh Inc. provides," and that "the

6   names of the apps are confusing."

7       56. On October 16, 2015 WeMash received notification from LinkedIn, Case

8   No. 151016-005735 ("the LinkedIn Complaint"), requesting that WeMash

9   "immediately remove the infringing content, identified as: the trademark WeMash,"

10  from its LinkedIn webpage. While the LinkedIn Complaint did not provide any

11  information regarding the complainant or the basis for the LinkedIn Complaint,

12  WeMash is informed and believes, and on that basis alleges that the LinkedIn

13  Complaint was filed by Defendant WeMesh with respect to its alleged rights in the

14  mark WEMESH.

15      57. WeMash is informed and believes, and on that basis alleges that

16  Defendant WeMesh had no good faith basis for filing the Instagram Complaint,

17  Apple Complaint and/or LinkedIn Complaint. Instead, WeMash is informed and

18  believes, and on that basis alleges that Defendant WeMesh's Instagram Complaint,

19  Apple Complaint and/or LinkedIn Complaint are based on unfounded accusations

20  aimed at wrongfully interfering with WeMash's use of its WEMASH Marks,

21  disrupting WeMash's business and reputation, and the Instagram Complaint, Apple

22  Complaint and/or LinkedIn Complaint were calculated to harm, and have in fact

23  harmed WeMash's business interests, including but not limited to its ability to

24  advertise its Wemes App.

25      58. On or about October 20, 2015, WeMash's counsel responded to

26  Instagram, Apple and LinkedIn, informing each of them that WeMash is the

27  exclusive owner of the WEMASH Marks.

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

315863740.3

18

FIRST AMENDED COMPLAINT

59. On or about October 21, 2015, Instagram notified counsel for WeMash that "Based on the information you've provided, we've restored the content that was removed."

60. In addition, WeMash's counsel sent a letter to counsel for Defendant WeMesh on or about October 20, 2015, asserting that WeMash is the exclusive owner of rights in and to the WEMASH Marks, and that Defendant WeMesh's actions in filing the Instagram Complaint, Apple Complaint and LinkedIn Complaint were calculated to harm, and have in fact harmed WeMash's business interests, including but not limited to its ability to advertise its Wemes App.

61. On or about October 27, 2015, WeMash's counsel received a notification from Apple that the Apple Complaint remains unresolved.  To date, the LinkedIn Complaint remains unresolved.

62. WeMash is informed and believes, and on that basis alleges that Defendant WeMesh targeted Plaintiff WeMash in California by delivering the WeMesh Demand Letter to Studio City, California, and selecting three California companies with which to lodge its complaints: (a) Instagram Complaint (Instagram is headquartered in Menlo Park, California); (b) Apple Complaint (Apple is headquartered in Cupertino, California);  and (c) LinkedIn Complaint (LinkedIn is headquartered in Mountain View, California).

**FIRST CLAIM FOR RELIEF**
**(Federal Unfair Competition and False Designation of Origin,**
**15 U.S.C. § 1125(a))**
**(As to Defendant WeMesh)**

63. WeMash hereby realleges and incorporates each and every allegation contained in the above paragraphs, by reference as though fully set forth herein.

64. WeMash owns the common law trademarks WEMASH and WEMES, which are valid and subsisting, as well as the WEMASH Application and the WEMES Application (together, "the Applications").  WeMash's WEMASH and

1   WEMES marks are inherently distinctive and are uniquely associated with WeMash

2   in the minds of consumers.

3       65. Defendant WeMesh's use, distribution, offer for sale and/or sale of

4   colorable imitations of WeMash's WEMASH and WEMES marks, as described in

5   this Complaint, including but not limited to in connection with the

6   www.wemesh.com domain name, has caused and is likely to cause confusion,

7   deception, and mistake by creating the false and misleading impression that the

8   WeMesh Goods are manufactured or distributed by WeMash, that Defendant

9   WeMesh is affiliated, connected, or associated with WeMash, and/or that WeMash

10  has sponsored, endorsed or approved of Defendant WeMesh.

11      66. Defendant WeMesh has made false representations, false descriptions,

12  and/or false designations of WeMash's goods in violation of 15 U.S.C. § 1125(a).

13  WeMash is informed and believes, and on that basis alleges that Defendant

14  WeMesh's activities have caused and, unless enjoined by this Court, will continue

15  to cause a likelihood of confusion and deception of members of the trade and

16  public, as well as injury to WeMash's goodwill and reputation as symbolized by the

17  WEMASH and WEMES common law trademarks, for which WeMash has no

18  adequate remedy at law.

19      67. Defendant WeMesh's actions demonstrate an intentional, willful and

20  malicious intent to trade on the goodwill associated with WeMash's WEMASH and

21  WEMES marks, to the great and irreparable injury of WeMash.

22      68. Defendant WeMesh's conduct has caused, and is likely to continue

23  causing, substantial injury to the public and to WeMash.  WeMash is entitled to

24  injunctive relief and to recover Defendant WeMesh's profits, actual damages,

25  enhanced profits and damages, costs and reasonable attorneys' fees under 15 U.S.C.

26  §§ 1125(a), 1116 and 1117.

27  //

28  //

## SECOND CLAIM FOR RELIEF
### (Cybersquatting, 15 U.S.C. § 1125(d))
### (As to All Defendants)

69. WeMash hereby realleges and incorporates each and every allegation contained in the above paragraphs by reference as though fully set forth herein.

70. WeMash's WEMASH mark was distinctive at the time Defendant WeMesh and/or Defendant Pazaratz registered, trafficked in and/or used the www.weme.sh, www.wemesh.me, www.wemesh.tv, www.wemesh.co, www.wemesh.video and www.wemesh.ca domains (the "WeMesh Domains") as described herein.  The WeMesh Domains presently used and/or controlled by Defendant WeMesh and/or Defendant Pazaratz, as described herein, incorporate a colorable imitation of WeMash's WEMASH mark.

71. WeMash is informed and believes, and on that basis alleges that Defendant WeMesh and/or Defendant Pazaratz registered, trafficked in and/or used the WeMesh Domains as described herein with a bad faith intent to profit from the WEMASH mark.

72. Defendants' cyberpiracy has caused and, unless and until enjoined and restrained by order of this Court, threatens to and will continue to cause great and irreparable harm to WeMash.

73. WeMash has no adequate remedy at law, and it is entitled to injunctive relief cancelling the WeMesh Domains.

74. As a direct and proximate result of Defendants' wrongful actions as described herein, WeMash has been damaged in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Cancellation of Federal Trademark Registration,
### 15 U.S.C. §§ 1119, 1052(d) and 1064)
### (As to Defendant WeMesh)

75. WeMash hereby realleges and incorporates each and every allegation contained in the above paragraphs by reference as though fully set forth herein.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

315863740.3

21

FIRST AMENDED COMPLAINT

76. WeMash is informed and believes that WeMesh is the current listed owner of Registration No. 4,757,374 for the mark WEMESH.  According to USPTO records, the Registration issued on June 16, 2015, claiming a date of first use in commerce of January 10, 2015 for "Downloadable mobile software applications for synchronizing multimedia content with audio and text communication; Computer software for synchronizing content between mobile devices" in Class 9.

77. The mark shown in the WEMESH Registration so resembles WeMash's WEMASH and/or WEMES marks previously used by WeMash, and/or its affiliates and licensees, and not abandoned, as to be likely, when used on or in connection with the goods identified in the WEMESH Registration, to cause confusion or mistake, or to deceive, and Defendant WeMesh's WEMESH mark is thus unregistrable under §2(d) of the United States Trademark Act, 15 U.S.C. § 1052(d).

78. WeMash has been, and will continue to be irreparably damaged and injured by registration of the mark shown in the WEMESH Registration because such registration gives Defendant WeMesh *prima facie* evidence of ownership of and the exclusive right to use a mark that is confusingly similar to WeMash's previously-used and not-abandoned marks, in derogation of WeMash's rights in its marks.

79. Registration No. 4,757,374 for the mark WEMESH should therefore be canceled pursuant to 15 U.S.C. § 1119.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Judgment of No Trademark Infringement,**
**28 U.S.C. §§ 2201 and 2202)**
**(As to Defendant WeMesh)**

80. WeMash hereby realleges and incorporates each and every allegation contained in the above paragraphs by reference as though fully set forth herein.

81. Defendant WeMesh maintains that WeMash's use of its WEMASH and/or WEMES marks infringes trademarks or other intellectual property rights owned by Defendant WeMesh.

82. Accordingly, there exists an immediate, real and substantial controversy as to whether WeMash's use of the WEMASH Marks infringes trademarks or other intellectual property rights owned by Defendant WeMesh.

83. WeMash has a reasonable apprehension of suit because Defendant WeMesh sent letters accusing WeMash of infringement of the WEMESH and/or W & Design (ribbon) marks to WeMash and to social media providers and/or other internet service providers which asserted false and/or misleading statements that WeMash is allegedly infringing the trademark rights of Defendant WeMesh.

84. WeMash denies that Defendant WeMesh has any rights in or to the WEMESH mark, and denies that any rights in the WEMESH mark and/or W & Design (ribbon) are infringed.

85. Pursuant to 28 U.S.C. §§2201 and 2202, WeMash seeks a declaratory judgment that WeMash has not and does not infringe the trademarks or other intellectual property rights owned by Defendant WeMesh either directly, contributorily or by inducement.

**FIFTH CLAIM FOR RELIEF**
**(Statutory Unfair Competition, Cal. Bus. Prof. Code § 17200)**
**(As to All Defendants)**

86. WeMash hereby realleges and incorporates each and every allegation contained in the above paragraphs by reference as though fully set forth herein.

87. Defendants' acts and practices, as alleged above, constitute unfair competition in violation of Cal. Bus. & Prof. Code § 17200.

88. For example, WeMash is informed and believes, and on that basis alleges that by virtue of the misconduct described herein, including but not limited to contacting social media providers or other internet service providers and asserting

1   false and/or misleading statements that WeMash is infringing the trademark rights

2   of Defendant WeMesh, when such is not true in fact, Defendant WeMesh has

3   engaged in unlawful, unfair and/or fraudulent business acts and practices in

4   violation of Cal. Bus. & Prof. Code §17200

5        89. WeMash is further informed and believes, and on that basis alleges that

6   Defendants engaged in the misconduct described herein, including but not limited

7   to marketing, distributing and/or selling products bearing colorable imitations of the

8   WeMash Marks and acquiring and/or registering www.wemesh.com and/or the

9   WeMesh Domains in order to purposefully trade off the goodwill and reputation of

10  WeMash and to confuse and deceive consumers by creating the false and

11  misleading impression that Defendant WeMesh's products are manufactured,

12  produced, distributed, endorsed, sponsored, approved and/or licensed by WeMash,

13  or are associated or connected with WeMash.

14       90. WeMash is informed and believes, and on that basis alleges Defendants

15  performed the acts alleged herein for the purpose of injuring WeMash. The acts

16  alleged herein continue to this day and present a threat to WeMash, the general

17  public, the trade and consumers.

18       91. As a result of Defendants' wrongful acts, WeMash has suffered and will

19  continue to suffer loss of income, profits and valuable business opportunities and if

20  not preliminarily and permanently enjoined, Defendants will have unfairly derived

21  and will continue to unfairly derive income, profits and business opportunities as a

22  result of their wrongful acts.

23       92. Pursuant to Cal. Bus. & Prof. Code § 17200, WeMash seeks an order of

24  this Court preliminarily and permanently enjoining Defendants from continuing to

25  engage in the unlawful, unfair or fraudulent acts or practices set forth herein, as

26  well as restitution and/or disgorgement of any monies received by Defendants

27  through such acts or practices.

28  //

## SIXTH CLAIM FOR RELIEF
### (Unfair Competition Under California Common Law)
### (As to All Defendants)

93. WeMash hereby realleges and incorporates each and every allegation contained in the above paragraphs by reference as though fully set forth herein.

94. WeMash is informed and believes, and on that basis alleges that Defendants intended to use WeMash's WEMASH and/or WEMES marks, or colorable imitations thereof, in a manner which is likely to confuse and mislead members of the relevant public as to the origin, sponsorship, approval or license of Defendant WeMesh's products and as to the false association of WeMesh with WeMash.  WeMash is informed and believes, and on that basis alleges that Defendants' conduct as alleged herein was intended to confuse and mislead members of the public, and members of the public will believe that WeMash sponsored, approved or is affiliated with Defendant WeMesh and that WeMash originated, approved or licensed Defendant WeMesh's products and/or services.

95. Defendants' conduct alleged herein infringes WeMash's WEMASH and WEMES trademark rights and constitutes passing off and common law unfair competition with WeMash, all of which has damaged and will continue to irreparably damage WeMash's goodwill and reputation unless restrained by this Court.  WeMash has no adequate remedy at law.

96. WeMash is informed and believes, and on that basis alleges that WeMash has suffered and continues to suffer direct and actual damages as a result of Defendants' conduct, including but not limited to lost sales and business opportunities and damage to WeMash's reputation and the WEMASH and WEMES marks.  WeMash is entitled to recover its actual damages as well as Defendants' profits generated from the promotion, distribution, sale and offer for sale of Defendant WeMesh's products that bear WeMash's WEMASH and/or WEMES marks, or colorable imitations thereof.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

315863740.3

25

FIRST AMENDED COMPLAINT

97. Because Defendants' conduct alleged herein has been intentional, oppressive, malicious, fraudulent and in willful disregard of WeMash's rights, WeMash is also entitled to recover punitive and exemplary damages.

98. WeMash has suffered, and if Defendants are not enjoined from their wrongful acts of common law trademark infringement, passing off and unfair competition, will continue to suffer great and irreparable injury, loss and damage to its rights in and to its WEMASH and WEMES marks and the goodwill associated therewith for which it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, WeMash prays as follows:

1.   Cancellation of U.S. Trademark Registration No. 4,757,374 for the mark WEMESH pursuant to 15 U.S.C. § 1119;

2.   For a declaration that:

    a.   Defendant WeMesh does not own valid trademark rights in the WEMESH mark;

    b.   WeMash does not infringe and has not infringed any trademark or other intellectual property allegedly owned by Defendant WeMesh either directly, contributorily or by inducement; and

    c.   Defendants have engaged in cyberpiracy in violation of 15 USC §1125(d) and the WeMesh Domains should be ordered cancelled;

3.   Defendant WeMesh and all of its respective agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendant WeMesh, and all those in active concert or participation with them, and each of them, be enjoined preliminarily and permanently, from directly or indirectly infringing WeMash's trademarks in any manner including but not limited to:

    a.   Making statements to social media and/or other internet service providers regarding any of the WEMASH Marks or any variation

1    thereof and/or any of the WeMash Goods/Services;

2    b.   Using, displaying, advertising, promoting, registering, transferring,

3         or assigning, including on or in connection with any goods or

4         services, including but not limited to the WeMesh App, WeMesh

5         Goods, services, promotional items, domain names and web sites,

6         the WEMASH, WEMES and/or W & Design (crown) marks, the

7         WEMESH Mark, or any colorable imitations thereof;

8    c.   Using, offering for sale, or selling, any trademark, logo, design, or

9         source designation of any kind on or in connection with Defendant

10        WeMesh's goods and/or services that is likely to cause confusion,

11        mistake, deception, or public misunderstanding that such goods are

12        produced or provided by WeMash, are sponsored or authorized by

13        WeMash, or are in any way connected or related to WeMash;

14   d.   Using, offering for sale, or selling, any trademark, logo, design, or

15        source designation of any kind on or in connection with Defendant

16        WeMesh's goods that dilutes or is likely to dilute the

17        distinctiveness of the trademarks or logos of WeMash;

18   e.   Passing off, palming off, or assisting in passing off or palming off

19        Defendant WeMesh's goods as those of WeMash, or otherwise

20        continuing any and all acts of unfair competition as alleged in this

21        Complaint;

22   f.   Engaging in acts of Federal or California statutory or common law

23        trademark infringement, passing off or unfair competition that

24        would damage or injure WeMash and/or the WEMASH Marks,

25        logos, proprietary designs and/or other intellectual property.

26   3.   Defendant WeMesh be ordered to cease offering for sale, marketing,

27 promoting, and selling, to remove from stores and websites all products bearing

28 Defendant WeMesh's WEMESH mark, or any other colorable imitation, which are

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

315863740.3

27

FIRST AMENDED COMPLAINT

in Defendant WeMesh's possession or have been supplied by Defendant WeMesh or under its authority, to any store or customer, including, but not limited to, any wholesaler, distributor, distribution center, retail store, consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's order as it relates to said injunctive relief against Defendant WeMesh;

4.      Defendant WeMesh be ordered to deliver up for impoundment and for destruction, all games, apps, bags, boxes, labels, tags, signs, packages, advertising, sample books, promotional material, stationary, software, source code or other materials in the possession, custody, or under the control of Defendant WeMesh and/or Defendant WeMesh' downstream  distributors, bearing the WEMESH mark;

5.      Defendant WeMesh be compelled to account to WeMash for any and all profits derived by Defendant WeMesh from the sale or distribution of infringing goods as described in this Complaint;

6.      That WeMash be awarded restitution of any money or property resulting from Defendant WeMesh's unfair and/or illegal acts as described in this Complaint;

7.      That the Court find Defendant WeMesh's acts of trademark infringement and unfair competition to be knowing and willful, and exceptional within the meaning of 15 U.S.C. §1117;

8.      That, as to all claims, WeMash be awarded damages, including its actual damages, Defendant WeMesh and/or Defendant Pazaratz's profits, treble and punitive damages, pre- and post-judgment interest, enhanced damages and costs, as well as its attorneys' fees and costs, in an amount to be ascertained pursuant to applicable laws, including, without limitation, 15 U.S.C. §1117, California law and the common law;

9.      That, pursuant to 15 U.S.C. § 1117, Defendants be ordered to pay over to WeMash statutory damages for Defendants' violation of 15 U.S.C. § 1125(d); and

1       10.    WeMash have such other and further relief as the Court may deem just

2  and appropriate.

3  / /

4  / /

5  / /

6

7  Dated:    January 12, 2016             MANATT, PHELPS & PHILLIPS, LLP

8

9                                  By: /s/ Shari Mulrooney Wollman

10                                    Shari Mulrooney Wollman
                                       Jessica A. Wood

11                                    *Attorneys for Plaintiff*
                                     WeMash, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY TRIAL DEMAND

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 38(b) and L.R. 38-1, Plaintiff WeMash, Inc. hereby demands a trial by jury on all issues triable by a right to a jury trial in the above-captioned action.


Dated:      January 12, 2016                    MANATT, PHELPS & PHILLIPS, LLP


                                                By: /s/ Shari Mulrooney Wollman
                                                    Shari Mulrooney Wollman
                                                    Jessica A. Wood
                                                    *Attorneys for Plaintiff*
                                                    WeMash, Inc.