BOBBY GHAJAR #198719
bobby.ghajar@pillsburylaw.com
MARCUS D. PETERSON #265339
marcus.peterson@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone:  213.488.7100
Facsimile:   213.629.1033

Attorneys for Defendants
WEMESH INC. and MICHAEL PAZARATZ

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| WEMESH INC, an Ontario Canada corporation,<br><br>        Counter-Claimant,<br><br>   vs.<br><br>WEMASH, INC., a Delaware corporation.<br><br>        Counter-Defendant. | Case No. 2:15-cv-08719 JFW(JPRx)<br><br>**DEFENDANT WEMESH INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge:     Hon. John F. Walter<br>Crt Rm:   16 |
| WEMESH INC, an Ontario Canada corporation,<br><br>        Counter-Claimant,<br><br>   vs.<br><br>WEMASH, INC., a Delaware corporation.<br><br>        Counter-Defendant. | |

-1-

**INTRODUCTORY STATEMENT**

Defendant WeMesh Inc. is a startup technology firm based in Ontario, Canada that develops mobile applications to enhance the delivery and utilization of synchronous mobile media experiences.  WeMesh has developed proprietary technology that is able to synchronize media playback across multiple mobile devices, such that the differences in playback across devices is below the level of human perception (less than 10 milliseconds).  This allows users to watch videos simultaneously with other people, irrespective of geographic distance, while engaging in voice and text communication.  With an "app" called "WeMesh®," it has combined two popular mobile activities – watching videos and messaging – into one innovative platform for social viewing.  That app has been available since early 2015 on the Google Play Store and the Apple App Store.  These two app stores are the official distribution platforms for Google and Apple respectively, and represent the largest distribution channels for mobile applications, with an estimated 4 million apps listed and 150 billion app downloads between them.  WeMesh's mobile app "WeMesh" has been downloaded over 150,000 times and has been featured in major national and international publications such as Slashdot, TechCrunch, iMore and Product Hunt that have monthly circulating viewerships that exceed 15 million people.

Plaintiff WeMash, Inc. ("Plaintiff") filed this lawsuit in Los Angeles in retaliation for WeMesh's efforts to enforce its trademark rights in the federally-registered mark WEMESH® on the various "app" stores against Plaintiff's newly-launched app, which it called "Wemes."

Plaintiff's First Amended Complaint hinges on the allegation that Plaintiff – rather than WeMesh – was first to acquire trademark rights in its name.  This allegation was made despite the fact that Defendant, WeMesh, was *first* to place an app in any app store; *first* to commercialize an app; *first* to sell its app to

-2-

consumers; and – significantly – *first* to register its mark with the U.S. Patent and Trademark Office.  Pressed for details on its alleged trademark priority in the terms "WeMash" or "Wemes," Plaintiff's First Amended Complaint resorts to vague and irrelevant descriptions of activity that do not demonstrate that Plaintiff developed any trademark rights, let alone rights superior to WeMesh's use.  None of Plaintiff's alleged rights would prevent WeMesh from continuing to promote and use its WEMESH app.

WeMesh hereby answers the First Amended Complaint, and files its Counterclaims against WeMash, Inc., to hold it liable for infringing WeMesh's trademark rights, for declaratory relief that WeMesh owns and may use the WEMESH mark, and for other relief.

## ANSWER TO FIRST AMENDED COMPLAINT

Defendant WeMesh Inc. ("WeMesh" or Defendant"), by and through its counsel, answers the First Amended Complaint ("FAC") of plaintiff WeMash, Inc. ("Plaintiff"), as follows.  Unless specifically admitted herein, Defendant denies each of the allegations of the FAC and specifically denies that Plaintiff is entitled to any relief whatsoever.  WeMesh's answer here is not intended to waive or limit any of Defendant Pazaratz's rights or objections. [1]

## PARTIES

1.      Defendant admits the allegations contained in Paragraph 1 of the FAC.

2.      Defendant admits the allegations contained in Paragraph 2 of the FAC relating to WeMesh's place of business of 340 Brookview Court, Ancaster L9G4C2 Ontario, Canada.

3.      Defendant admits the allegations contained in Paragraph 3 of the FAC as to Defendant Pazaratz.

## JURISDICTION AND VENUE

4.      Defendant admits that the Court has subject matter jurisdiction over the allegations in the FAC, but otherwise denies the remaining allegations in Paragraph 4 of the FAC.  Defendant specifically denies that Plaintiff properly invoked the Court's ability to exercise declaratory judgment.

5.      Defendant denies the allegations contained in Paragraph 5 of the FAC.

6.      Defendant denies that venue is proper in this district, as neither WeMesh nor Dr. Pazaratz are located in this district.

---

[1]  Defendant Pazaratz – a Canadian resident – has objected to the attempt by Plaintiff to assert personal jurisdiction over him, and intends to seek dismissal of the claims against him as permitted by the Court's February 29, 2016 Order (Dkt. 50).

-4-

## **ALLEGATIONS RELATING TO "FACTUAL BACKGROUND"**

7.      Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 7 of the FAC and thus denies such allegations.

8.      Defendant admits that Plaintiff at some point acquired the domain name www.wemash.com.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 8 of the FAC and thus denies such allegations.

9.      Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 9 of the FAC and thus denies such allegations.

10.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 10 of the FAC and thus denies such allegations.

11.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 11 of the FAC and thus denies such allegations.

12.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 12 of the FAC and thus denies such allegations.

13.     Defendant admits that Plaintiff recently launched an app called WEMES, which is available for download on at least Apple's App Store. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 13 of the FAC and thus denies those remaining allegations.

14.     Defendant admits that Plaintiff's app named "WEMES" is currently available for download on Apple's App Store.  Defendant lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 14 of the FAC and thus denies those remaining allegations.

15.     Defendant admits that Plaintiff's app named "WEMES" is currently promoted on various social media.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 15 of the FAC and thus denies those remaining allegations.

16.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 16 of the FAC and thus denies such allegations.  Defendant further denies that any such allegations are sufficient to evidence trademark use.

17.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 17 of the FAC and thus denies such allegations.  Defendant further denies that any such allegations are sufficient to evidence trademark use.

18.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 18 of the FAC and thus denies such allegations.  Defendant further denies that any such allegations are sufficient to evidence trademark use.

19.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 19 of the FAC and thus denies such allegations.  Defendant further denies that any such allegations are sufficient to evidence trademark use.

20.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 20 of the FAC and thus denies such allegations.  Defendant further denies that any such allegations are sufficient to evidence trademark use.

21.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 21 of the FAC and thus denies such allegations.  Defendant further denies that any such allegations are sufficient to evidence trademark use.

22.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 22 of the FAC and thus denies such allegations.

23.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 23 of the FAC and thus denies such allegations.

24.     Defendant admits that Plaintiff has filed for the two U.S. trademark applications referenced in Paragraph 24 of the FAC, and that neither of Plaintiff's trademark applications has matured to registration.  Defendant further admits that Exhibits 1 and 2 purport to be printouts from the USPTO.   Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 24 of the FAC and thus denies such allegations.

25.     Defendant admits that Dr. Michael Pazaratz is one of the founders of WeMesh Inc.

26.     Defendant admits that WeMesh develops mobile applications to enhance the delivery and utilization of synchronous mobile media experiences, and that its WEMESH app is available for use on various platforms.   Defendant admits that the WEMESH app allows users to watch YouTube videos at the same time as others while exchanging messages. Defendant otherwise denies Plaintiff's remaining characterizations and allegations in Paragraph 26 of the FAC.

27.     Defendant admits that its WEMESH app is available for download on at least through Apple's App Store and on Google Play.

28.     Defendant admits that it "advertises the WeMesh App" and that it is available for download nationwide, but otherwise denies Plaintiff's characterizations and remaining allegations in Paragraph 28.

29.     Defendant admits that the WEMESH app is accessible by consumers in California.  Defendant otherwise denies the remaining allegations in Paragraph 29.

30.     Defendant denies the relevance of its purported agreement with a third party (in Paragraph 30, alleged to be Apple) to Plaintiff's claims in the FAC, and further objects to this allegation as requiring legal interpretation of a third party agreement, and on that basis, does not believe that any answer is necessary.

31.     Defendant denies the relevance of its purported agreement with a third party (in Paragraph 31, alleged to be Google) to Plaintiff's claims in the FAC, and further objects to this allegation as requiring legal interpretation of a third party agreement, and on that basis, does not believe that any answer is necessary.

32.     Defendant admits that it is the owner of record on certain registrars of certain of the domain names alleged in Paragraph 32 of the FAC, and that it operates such domain names as part of its business.   Defendant further admits that it operates the website www.weme.sh.

33.      Defendant admits that Dr. Pazaratz registered certain domain names on behalf of Defendant.  Defendant otherwise denies the allegations in Paragraph 33 of the FAC.

34.     Defendant admits that Dr. Pazaratz registered certain domain names on behalf of Defendant.  Defendant otherwise denies the allegations in Paragraph 34 of the FAC.

35.     No letter is attached to the FAC; therefore, Defendant is unable to confirm the statements referenced in Paragraph 35 of the FAC.  Defendant admits that its owns or operates the domain names recited in Paragraph 35.  To the extent

any further response is required, Defendant denies the remaining allegations in Paragraph 35 of the FAC.

36.     Defendant admits that Plaintiff's use of WEMASH is confusingly similar to Defendant's rights to the WEMESH mark.

37.     Defendant denies the allegations in Paragraph 37 of the FAC, namely, that it "registered and/or used" its domain names to "[create] a likelihood of confusion ...."

38.     Defendant admits that it markets its WEMESH product through social media, including the social media platforms referenced in Paragraph 38. Defendant otherwise denies Plaintiff's characterizations.

39.     Defendant denies the allegations in Paragraph 39 as to how Defendant purportedly promotes its WEMESH app, or that certain purported Californian artists are "featured."

40.     Defendant denies the allegations in Paragraph 40 as to the characterization of Defendant's WEMESH app, and that it "features popular music videos and other celebrity entertainment content...."

41.     To the extent that Defendant must respond to the allegations in Paragraph 41 of the FAC, Defendant denies such allegations.

42.     Defendant admits that its principals, in connection with the company and as part of the company's business, were in California on company business. Defendant denies the remaining allegations in Paragraph 42 of the FAC.

43.     Defendant admits that on May 5, 2014, it filed an intent-to-use application for the WEMESH mark in the United States, which later matured to registration.  Defendant admits that some of Plaintiff's later-filed applications, and in particular, Plaintiff's WEMES trademark application, cover similar or relief goods and/or services – and in the case of the WEMES trademark application – the exact same goods (software) – as Defendant's prior-filed WEMESH trademark

-9-

application.  Defendant otherwise denies the remaining allegations and characterizations in Paragraph 43 of the FAC.

44.     Defendant admits that it filed a Statement of Use in connection with its WEMESH trademark application, and that the WEMESH mark matured to registration.  The USPTO file records are the best evidence of those filings, and the allegations therein.  Defendant denies the implication that the first use date provided to the USPTO is, in fact, the earliest date on which Defendant used its WEMESH trademark.  To the extent a further response is required, Defendant denies the remaining allegations in Paragraph 44.

45.     Defendant notes Plaintiff's admission that its goods and services are confusingly similar to those offered by Defendant, and covered in Defendant's federal registration.  Defendant further admits that Plaintiff's use of the WEMASH and WEMES marks in connection with mobile apps is likely to cause confusion.  Defendant further admits that the parties' respective software apps are offered to the same class of consumers and that they are both available on various app stores.

46.     Defendant notes Plaintiff's admission that its WEMASH and WEMES marks are confusingly similar to Defendant's prior-filed and registered WEMESH mark.  Defendant admits that the respective marks, in typed form, are only one-letter different from the other.  Defendant denies that "WEMASH" and "WEMES" are "completely arbitrary."  To the extent any further response is required, Defendant denies the remaining allegations in Paragraph 46 of the FAC.

47.     Defendant denies that it requires any license or authority from Plaintiff to use the WEMESH mark.  To the extent any further response is required, Defendant denies the remaining allegations in Paragraph 47 of the FAC.

48.     Defendant denies that Plaintiff has common law trademark priority with respect to the WEMESH mark.  Defendant otherwise lacks knowledge or

information sufficient to form a belief about the truth of the allegations contained in Paragraph 48 of the FAC and thus denies such allegations.

49.    Defendant admits that Plaintiff filed a petition to cancel the WEMESH registration after the lawsuit was filed.  Defendant denies that the petition is valid or meritorious.  That cancellation proceeding has been suspended.

50.    Defendant denies any characterization or allegation that *its* conduct is causing confusion or deception in the marketplace.  Defendant notes Plaintiff's admission that it contends that its use of the WEMASH and WEMES marks is likely to be confused with Defendant's use of the WEMESH mark.  Defendant further denies that it has misappropriated any perceived "goodwill" of Plaintiff's purported trademarks.  Defendant denies the remaining allegations in Paragraph 50 of the FAC.

51.    Defendant denies the allegations in Paragraph 51 of the FAC.

52.    Answering for itself, Defendant denies the allegations in Paragraph 52 of the FAC.

53.    No letter is attached to the FAC, so Defendant cannot verify the allegations referenced in Paragraph 53.  However, Defendant admits generally that its counsel in Canada sent a letter to WeMash advising it of concern over and objection to the use of the WEMASH and WEMES marks in connection with Plaintiff's then-recently launched app.   Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 53 of the FAC and thus denies such allegations.

54.    The allegations in Paragraph 54 relate to an alleged communication between a third party and Plaintiff.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 54 of the FAC and thus denies such allegations.

55.     The allegations in Paragraph 55 relate to an alleged communication between a third party and Plaintiff.  To the extent that the allegations refer to statements made in a letter from Defendant's Canadian counsel, that letter is the best evidence of such statements.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 55 of the FAC and thus denies such allegations.

56.     The allegations in Paragraph 56 relate to an alleged communication between a third party and Plaintiff.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 56 of the FAC and thus denies such allegations.

57.     Defendant denies the allegations in Paragraph 57 of the FAC.

58.     As no letters or notices are attached to the FAC, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 58 of the FAC and thus denies such allegations.

59.     The allegations in Paragraph 59 relate to an alleged communication between a third party and Plaintiff.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 59 of the FAC and thus denies such allegations.

60.     Defendant admits that Plaintiff's counsel sent a letter to Defendant's Canadian counsel, and that letter made certain claims.  That letter is the best evidence of Plaintiff's counsel's statements as referenced in Paragraph 60.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 60 of the FAC and thus denies such allegations.

61.     The allegations in Paragraph 61 relate to an alleged communication between a third party and Plaintiff.  Defendant lacks knowledge or information

-12-

sufficient to form a belief about the truth of the allegations contained in Paragraph 61 of the FAC and thus denies such allegations.

62.     Defendant denies the allegations in Paragraph 62 of the FAC, namely, that it "targeted" Plaintiff in California.

## ANSWER TO FIRST CLAIM OF RELIEF

63.     No response is necessary to Paragraph 63 of the FAC.

64.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 64 of the FAC and thus denies such allegations.

65.     Defendant notes Plaintiff's admission that its use of the marks WEMASH and WEMES is likely to cause confusion with Defendant's prior WEMESH mark.  Defendant further notes that Plaintiff has no claim for relief against the domain name wemesh.com.   Defendant denies that *it* is causing any consumer confusion with respect to *its* use of its federally-registered WEMESH mark in connection with its products.  Defendant admits that Plaintiff's use of WEMES and WEMASH in connection with an app is likely to cause confusion. To the extent any further response is necessary, Defendant denies any remaining allegation in Paragraph 65 of the FAC that implies that Defendant has committed any wrongdoing.

66.     Defendant denies the allegations in Paragraph 66 of the FAC.

67.     Defendant denies the allegations in Paragraph 67 of the FAC.

68.     Defendant denies the allegations in Paragraph 68 of the FAC.

## ANSWER TO SECOND CLAIM FOR RELIEF

69.     No response is necessary to Paragraph 69 of the FAC.

70.     Defendant denies the allegations in Paragraph 70 of the FAC.

71.     Defendant denies the allegations in Paragraph 71 of the FAC.

72.     Defendant denies the allegations in Paragraph 72 of the FAC.

-13-

73.     Defendant denies the allegations in Paragraph 73 of the FAC.

74.     Defendant denies the allegations in Paragraph 74 of the FAC.

### ANSWER TO THIRD CLAIM FOR RELIEF

75.     No response is necessary to Paragraph 75 of the FAC.

76.     Defendant admits that it is the owner of a federal registration for the WEMESH mark.  The USPTO records are the best evidence of the particulars of that registration.

77.     Defendant notes Plaintiff's admission that the WEMES and WEMASH marks "so resemble[]" Defendant's WEMESH mark, and admits that Plaintiff's use of those marks on apps and related goods is likely to cause confusion.   Defendant denies the remaining allegations in Paragraph 77 of the FAC, including, specifically, any allegation that Defendant has engaged in any wrongdoing.

78.     Defendant denies the allegations in Paragraph 78 of the FAC.

79.     Defendant denies the allegations in Paragraph 79 of the FAC.

### ANSWER TO FOURTH CLAIM FOR RELIEF

80.     No response is necessary to Paragraph 80 of the FAC.

81.     Defendant admits that it has challenged Plaintiff's use of the WEMASH and WEMES marks in connection with an app and related goods.

82.     Defendant admits that there is a controversy between the parties, but denies that Plaintiff acted in good faith or that it properly invoked jurisdiction under the Declaratory Judgment Act.

83.     Defendant denies the characterizations set forth in Paragraph 83 of the FAC, and is otherwise without knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 83 of the FAC and thus denies such allegations.

84.     Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 84 of the FAC and thus denies such allegations.

85.     Defendant does not believe that any response to Paragraph 85 is required, but to the extent one is required, Defendant denies the allegations therein.

### ANSWER TO FIFTH CLAIM FOR RELIEF

86.     No response is necessary to Paragraph 86 of the FAC.

87.     Defendant denies the allegations in Paragraph 87 of the FAC.

88.     Defendant denies the allegations in Paragraph 88 of the FAC.

89.     Defendant denies the allegations in Paragraph 89 of the FAC.

90.     Defendant denies the allegations in Paragraph 90 of the FAC.

91.     Defendant denies the allegations in Paragraph 91 of the FAC.

92.     Defendant denies the allegations in Paragraph 92 of the FAC.

### ANSWER TO SIXTH CLAIM FOR RELIEF

93.     No response is necessary to Paragraph 93 of the FAC.

94.     Defendant denies the allegations in Paragraph 94 of the FAC.

95.     Defendant denies the allegations in Paragraph 95 of the FAC.

96.     Defendant denies the allegations in Paragraph 96 of the FAC.

97.     Defendant denies the allegations in Paragraph 97 of the FAC.

98.     Defendant denies the allegations in Paragraph 98 of the FAC.

### RESPONSE TO PRAYER FOR RELIEF

Defendant denies that Plaintiff is entitled to any of its prayer for relief.

## AFFIRMATIVE DEFENSES

Defendant alleges the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

For the reasons explained in Defendants' Motion to Dismiss, Plaintiff's FAC fails to state a claim upon which relief may be granted as to WeMesh and, separately, Dr. Pazaratz.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff lacks standing to assert rights in the alleged mark WEMASH that it does not own.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because it does not own valid trademark rights in the WEMASH and WEMES marks that are prior to WeMesh's actual and/or constructive use of its WEMESH mark.

### FOURTH AFFIRMATIVE DEFENSE

The Court has no personal jurisdiction over Defendant Pazaratz.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff lacks any claim for damages.

# WeMesh's Counterclaim Against WeMash, Inc.

## THE PARTIES

1.      Defendant/Counterclaimant WeMesh Inc. ("WeMesh") is a corporation organized and existing under the laws of Ontario, Canada, having its headquarters and principal place of business at 340 Brookview Court Ancaster CANADA L9G4C2.  WeMesh is the rightful owner of the federally-registered WEMESH trademark.  WeMesh has developed proprietary technology that is able to synchronize media playback across multiple mobile devices, such that the differences in playback across devices is below the level of human perception (less than 10 milliseconds). This allows users to watch videos simultaneously with other people, irrespective of geographic distance, while engaging in voice and text communication. With an "app" called "WeMesh," it has combined two popular mobile activities – watching videos and messaging – into one innovative platform for social viewing.

2.      Upon information and belief, Plaintiff/Counter-defendant WeMash, Inc. ("WeMash") is a corporation organized and existing under the laws of the state of California and having its principal place of business at 11271 Ventura Blvd., Suite 602, Studio City, CA 91604.

## JURISDICTION AND VENUE

3.      Jurisdiction of all trademark claims is proper under 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338  as the claims arise under the laws of the United States, including violations of the Lanham Act, as amended, 15 U.S.C. §§ 1041 et seq.

4.      Jurisdiction of all other claims is proper under 28 U.S.C. § 1332(a) (2) as the matter is between citizens of the United States and citizens of a foreign state and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.  Jurisdiction is also proper under 28 U.S.C. §1367 as the claims are so

-17-

related as to form the same case or controversy.

5.    Venue is proper in this district under 28 U.S.C. §1391(b)(1) because WeMash resides in this district.

6.    Through its filing of the initial Complaint, WeMash has admitted that jurisdiction and venue are proper in this District.

## FACTUAL BACKGROUND

### Defendant/Counterclaimant WeMesh and its WEMESH® Trademark

7.    WeMesh was formed in or around August 21, 2013 by Dr. Michael Pazaratz ("Dr. Pazaratz") and Dr. Saeed Darvish-Kazem ("Dr. Darvish-Kazem"). WeMesh continued the development of a mobile application ("app") for smartphones and tablets that had initially begun prior to the incorporation of PazKaz Enterprises.

8.    WeMesh's WEMESH app allows users to synchronize videos to watch them simultaneously across mobile devices while at the same time communicating via text and voice.  WeMesh combined two popular mobile activities – watching videos and chatting – into its innovative app.

9.    "WeMesh" is an invented term first coined by Dr. Pazaratz and Dr. Darvish-Kazem, co-founders of WeMesh, at least as early as July 2013 as a company and product name for an application that would bring groups of people together to take part in a communal activity of watching videos simultaneously. The mark WeMesh is highly distinctive and original.

10.    WeMesh put out early versions of the WEMESH app at least as early as Summer 2013 to investors and potential customers, soliciting feedback on the product from them.  During that time, WeMesh communicated with potential customers and also shared documents with consumers relating to the development of the WEMESH app.

11.    At least as early as October 2013, WeMesh operated a Facebook page

-18-

at www.facebook.com/wemesh through which it made public posts promoting the WEMESH app.

12.    WeMesh continued the development of the WEMESH app through the remainder of 2013 and throughout 2014.   For example, in 2014, WeMesh contracted with developers to continue building out features of the WEMESH app. It also made additional public demonstrations of the app in 2014.

13.    In or around March 2014, WeMesh purchased the www.wemesh.com domain name, and in April 2014, registered the www.wemesh.me, www.wemesh.ca, and www.wemesh.tv domain names.

14.    The WEMESH app was officially launched on the Apple iTunes App Store on or about January 9, 2015.  The app was launched on the Google Play store later in 2015, and it is estimated that the app has been downloaded over 150,000 times, and has garnered over 1900 customer reviews with an average score of 4.0 (including over 1100 5-star reviews).

15.    WeMesh promotes its app on the domain name "weme.sh" website. Its other domain names – all comprised of the "WeMesh" name – automatically redirect to that website.  WeMesh has long promoted its app through that website, and also promotes its app on Facebook at www.facebook.com/wemeshinc (where it posted content at least as early as November 2014), on Twitter at www.twitter.com/wemesh (where it  posted content as least as early as December 2014), on Instagram at www.instagram.com/wemesh (where it fposted content at least as early as January 2015) ,  on Pinterest at www.pinterest.com/wemesh, and on Vine at https://vine.co/u/1171654831669129217 (where it posted content at least as early as January 2015).

16.    On May 5, 2014, WeMesh applied to register the WEMESH mark in connection with "[d]ownloadable mobile software applications for synchronizing multimedia content with audio and text communication; Computer software for

-19-

synchronizing content between mobile devices," in International Class 9.   The application matured into Registration No. 4757374 on June 16, 2015.

17.     Under the law, WeMesh's constructive trademark priority date is May 5, 2014.

**WeMash and its Purported WEMASH and WEMES Trademarks**

18.     Upon information and belief, and according to Counter-defendant's allegations, the name "WEMASH" was initially conceived of by Quincy Jones III ("Jones") prior to the incorporation of WeMash.  He worked, through a company called QD3 Entertainment, to develop services.  In 2015, Jones and WeMash began to develop a mobile application called "Wemes" that is now offered by Counter-Defendant WeMash.

19.     Upon information and belief, the "Wemes" app allows users to create videos with text, graphic, or other multimedia overlays (called video memes or "vemes") and share them with others.

20.     Upon information and belief, the Wemes app is the only product that Jones and/or WeMash have actually offered to consumers under the WEMASH or WEMES trademarks.

21.     Upon information and belief, Jones is currently the CEO of WeMash and is one of two officers of the company.  Upon information and belief, Jones has directed all aspects of the company, and continues to do so.

22.     For example, upon information and belief, Jones conceived of the WEMES name and directed Counter-defendant to adopt it in connection with a mobile application.  Jones also directed the development of the infringing Wemes app, made the decision to release the app on the iTunes App Store, and directed marketing and promotion of the Wemes App.

23.     Today, WeMash markets its goods and services on its websites www.wemash.com and www.wemesapp.com.  WeMash does not conduct, and has

-20-

never conducted, any print, radio, or television advertising for its products or services.  Upon information and belief, Jones first purchased the www.wemash.com domain in 2008 through his company QD3 Entertainment. Upon information and belief, QD3 Entertainment owned the domain until early 2015.

24.     Upon information and belief, the www.wemash.com website had no content posted to it until August 2014, at which point a landing page was put up with the "WeMash" name and a link to contact the company.  At that time (August 2014), the wemash.com website did not mention, describe, market, or offer for sale any goods or services.  A true and correct copy of the website as it appeared on August 15, 2014 is below.



**Figure 1 – www.wemash.com as it appeared in August 2014**

25.     Upon information and belief, the www.wemash.com website remained largely unchanged from August 2014 until November 2015, which is after WeMesh filed this lawsuit.  It was not until November 2015 that WeMesh began to post information about any products or services.  A true and correct copy of the website as of December 16, 2015 appears below.



**Figure 2 – www.wemash.com as it appeared in December 2015**

26.     Upon information and belief, WeMash registered the domain name www.wemesapp.com in May 2015, and first posted content on that website in August 2015.  A true and correct copy of the website as it appeared on September 5, 2016 is below.

**Figure 3 – www.wemesapp.com website as it appeared in September 2015**

27.     Upon information and belief, WeMash promotes the Wemes app on social networking sites.  For example, WeMash promotes its Wemes app at www.facebook.com/wemesapp and www.facebook.com/wemash (on which it first posted in June 2015), www.twitter.com/wemesapp and www.twitter.com/wemashvids (on which it first Tweeted in June 2015), www.instagram.com/wemesapp (on which it first posted content in November 2015), and https://vine.co/u/1253885947930681344 (on which it first posted a video in September 2015)  All of these dates are well after WeMesh's actual use of, and constructive priority date for, its federally registered WEMESH trademark..

28.     WeMash did not promote or market any "WeMash" or "Wemes" app on social networking sites prior to June 2015.

29.     On June 25, 2014, which is after WeMesh filed its application to register the mark WEMESH, Counter-defendant WeMash applied to register the WEMASH trademark on an "intent-to-use" basis in connection with

-23-

"Entertainment services, namely, providing webcasts and online videos in the field of music, sports and entertainment; Providing a website featuring information in the field of music, sports and entertainment; Entertainment services, namely, providing information about music, sports and entertainment via an online network" in International Class 41.

30.     Upon information and belief, prior to filing the trademark application, on June 19, 2014, WeMash conducted a trademark clearance search for any marks similar to WEMASH.  The very first result in the search report was WeMesh's WEMESH application.

31.     Accordingly, in addition to constructive notice provided by WeMesh's federal trademark filing, WeMash was actually aware of the WEMESH application at the time it applied to register the WEMASH mark on June 19, 2014.

32.     Upon information and belief, WeMash elected to apply to register its mark for entertainment services in Class 41, instead of for software in Class 9 (which is the proper class for software apps).  Thus, WeMash's trademark filing indicated no intent to develop any products under the WEMASH mark.

33.     The United States Patent and Trademark Office issued a Notice of Allowance in connection with the WEMASH application on January 10, 2015, which meant that WeMash's mark could proceed to registration after WeMash was able to demonstrate use of the WEMASH mark.  WeMash filed for extensions of time to prove its use of the WEMASH mark on June 29, 2015 and December 28, 2015.

34.     Upon information and belief, WeMash took an extension of time in June 2015 because it had not yet made use of its mark.   Although the reasons why WeMash took a second extension of time in December 2015 are unknown, WeMash has yet to file a Statement of Use in connection with its WEMASH trademark application.   The WEMASH mark remains unregistered.

-24-

35.     On June 8, 2015, WeMash applied to register the WEMES app on an "intent-to-use basis" in connection with downloadable software in Class 9, database services in Class 41, and non-downloadable software in Class 42.

36.     Upon information and belief, WeMash applied to register the WEMES mark on an "intent-to-use" basis because it had not made trademark use of the term WEMES.

37.     As between the parties to this lawsuit, WeMesh is the only one with a federal trademark registration; WeMash does not own any trademark registration for the WEMASH or WEMES marks.

38.     WeMash does not own any trademark application or registration for the WEMASH or WEMES marks in Canada, which is where WeMesh is headquartered.

39.     WeMash does not conduct any business in Canada, other than that its software app is available to download by Canadian customers.

40.     WeMesh has actual and constructive priority of trademark use of the mark WEMESH prior to WeMash's purported trademark use of the terms WEMASH or WEMES.

41.     Upon information and belief, WeMash did not consummate any sales of a product branded "WeMash" prior to May 2014.

42.     Upon information and belief, WeMash did not consummate any sale of a service branded "WeMash" prior to May 2014.

43.     Upon information and belief, WeMash did not consummate any sale of a product branded "Wemes" prior to May 2014.

44.     Upon information and belief, WeMash was incorporated in April 2014, eight months after WeMesh was incorporated.

45.     Upon information and belief, WeMash first launched its app in September 2015, over eight months after WeMesh launched its WEMESH app.

-25-

46.     Upon information and belief, WeMash first posted content relating to its goods and services on its www.wemesapp.com website in September 2015, at least 9  months after WeMesh had begun promoting the WEMESH app on its own website.

47.     Upon information and belief, WeMash first posted content on any of its social media pages in June 2015, approximately at least nineteen (19) months after WeMesh first posted to its original Facebook page in October 2013 and at least six (6) months after WeMesh posted to any of its current social media accounts.

48.     Upon information and belief, WeMash's "Wemes" app has not been commercially successful.

49.     WeMash has agreed (and has alleged via its Complaint) that its use of the marks WEMASH and WEMES is likely to cause confusion with WeMesh's use of the mark WEMESH.

50.     WeMash has further agreed (and has alleged via its Complaint) that the marks WEMASH, WEMES, and WEMESH are confusingly similar.

51.     WeMash has also agreed (and has alleged via its Complaint) that WeMash offers for sale its WEMASH and WEMES products to the same class of consumers to whom WeMesh offers for sale its WEMESH app.

## FIRST CAUSE OF ACTION

### (Trademark Infringement under 15 U.S.C. §1114)

52.     WeMesh incorporates by reference and re-alleges allegations 1-51 above, as if set forth fully herein.

53.     WeMesh is the owner of a valid federal trademark registration for the mark WEMESH in connection with "[d]ownloadable mobile software applications for synchronizing multimedia content with audio and text communication; Computer software for synchronizing content between mobile devices," in

International Class 9.  WeMesh applied to register the mark on May 5, 2014 on an intent-to-use basis.

54.      Pursuant to 15 U.S.C. §1057(c), WeMesh has a constructive priority date of May 5, 2014 for the WEMESH trademark.

55.      Upon information and belief, WeMash's first use of the WEMASH and WEMES mark in connection with an app was September 2015, which is approximately 16 months after WeMesh's constructive priority date.

56.      Upon information and belief, WeMash and Jones have not made trademark use of WEMASH or WEMES in connection with any other good or service and WeMash's use of the WEMASH and WEMES marks in connection with its software app is likely to cause confusion with WeMesh's use of its WEMESH mark in connection with its own software app.

57.      In the alternative, WeMash claims to have used its WEMASH mark in connection with video library services.  WeMesh's use of the WEMESH mark in connection with a software app does not infringe any rights WeMash claims to have in WEMASH in connection with a video library.  If WeMash began using its WEMASH mark in connection with video library service relating to its software app after WeMesh's date of first use of WEMESH, such use would be infringing upon WeMesh's trademark rights.

58.      WeMash applied to register the WEMASH mark on June 24, 2014, and the WEMES mark on June 8, 2015, which is over a year after WeMesh's constructive priority date for the WEMESH trademark application.

59.      WeMash is using the WEMASH and WEMES marks in connection with the offering of its goods and services without WeMesh's consent, and with knowledge of WeMesh's rights.  The WEMASH and WEMES marks are highly similar to the WEMESH mark, as each is only one letter off – WEMASH replaces the "e" in "Mesh" with an "a," and WEMES is "WeMesh" without the "h."

-27-

60.     Although WeMash has alleged trademark use of WEMASH dating back to 2008 and trademark use of WEMES dating back to 2013, upon information and belief, use of WEMASH and WEMES did not begin until approximately September 2015.

61.     WeMash's unauthorized use of the WEMASH and WEMES marks in connection with the Wemes App indicates to consumers that WeMash's goods are in some manner connected with, sponsored by, affiliated with, or related to WeMesh, its licensees, or its goods and services.

62.     At least WeMash's recent use of the WEMASH and WEMES marks in connection with a software app is also likely to cause consumers to be confused as to source, nature and quality of the goods WeMash is promoting or selling.

63.     WeMash admits likelihood of confusion between the parties' respective products, as it states in its FAC, ¶65, "Defendant WeMesh's use, distribution, offer for sale and/or sale of colorable imitations of WeMash's WEMASH and WEMES marks, as described in this Complaint, including but not limited to in connection with the www.wemesh.com domain name, has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that the WeMesh Goods are manufactured or distributed by WeMash, that Defendant WeMesh is affiliated, connected, or associated with WeMash, and/or that WeMash has sponsored, endorsed or approved of Defendant WeMesh."

64.     Indeed, WeMash claims use of the highly similar WEMASH and WEMES marks on the same or very similar product (mobile application).

65.     WeMash sells its WEMES app in the exact same retail channel as both parties' apps appear in the iTunes App Store.

66.     WeMash's unauthorized use of the WEMASH and WEMES marks in connection with the offering of its goods and/or services deprives WeMesh of the

ability to control the consumer perception of the nature and quality of the goods and services marketed under the WEMESH mark, and places WeMesh's valuable reputation and goodwill in the hands of WeMash, over which WeMesh has no control.

67.     WeMash's unauthorized use of the WEMASH and WEMES marks in connection with its software app falsely suggests to consumers that WeMesh's goods and services are in some manner connected with, sponsored by, affiliated with, or related to WeMash and its products or services.

68.     The aforementioned acts of WeMash constitute trademark infringement in violation of 15 U.S.C. § 1114.

69.     The willful and intentional nature of the aforementioned acts of WeMash makes this an exceptional case pursuant to 15 U.S.C. § 1117(a).

70.     As a result of the foregoing alleged actions, WeMash has been unjustly enriched, and WeMesh has been injured and damaged.  Unless enjoined by the Court, WeMash's actions will further impair the value of WeMesh's name, reputation, and goodwill and cause injury and damages to WeMesh.

## SECOND CAUSE OF ACTION

### (Trademark Infringement under 15 U.S.C. §1125)

71.     WeMesh incorporates by reference and re-allege allegations 1-70 above, as if set forth fully herein.

72.     WeMesh owns a valid, protectable right in the WEMESH mark because it used the mark in commerce, in connection with mobile applications, as early as 2013, which is prior to use of that mark on such products by any other entity.

73.     WeMesh owns valid common-law rights in the WEMESH mark that predate its federal constructive priority date.

74.     Upon information and belief, WeMash and Jones did not make

-29-

trademark use of the WEMASH or WEMES marks in connection with mobile apps until September 2015, approximately nine months after WeMesh's application was formally launched, and nearly two years after WeMesh's first use of the WEMESH mark.

75.     WeMash's conduct complained of above constitutes infringement of WeMesh's common law trademark rights under 15 U.S.C. §1125(A) and California common law.

76.     The willful and intentional nature of the aforementioned acts of WeMash makes this an exceptional case pursuant to 15 U.S.C. § 1117(a).

77.     As a result of the foregoing alleged actions, WeMash has been unjustly enriched, and WeMesh has been injured and damaged.  Unless enjoined by the Court, WeMash's actions will further impair the value of WeMesh's name, reputation, and goodwill and cause injury and damages to WeMesh.

## THIRD CAUSE OF ACTION

### (False Designation of Origin under 15 U.S.C. §1125)

78.     WeMesh incorporates by reference and re-allege allegations 1-77 above, as if set forth fully herein.

79.     WeMash's unauthorized use of the WEMASH and WEMES marks in connection with its software app falsely suggests that its goods and/or services are connected with, sponsored by, affiliated with, or related to WeMesh, and constitutes a false designation of origin in violation of 15 U.S.C. §1125(a).

80.     The willful and intentional nature of the aforementioned acts of WeMash makes this an exceptional case pursuant to 15 U.S.C. § 1117(a).

81.     As a result of the foregoing alleged actions, WeMash has been unjustly enriched, and WeMesh has been injured and damaged.  Unless enjoined by the Court, WeMash's actions will further impair the value of WeMesh's name, reputation, and goodwill and cause injury and damages to WeMesh.

## FOURTH CAUSE OF ACTION

### (Common Law Trademark Infringement and Unfair Competition)

82.　WeMesh incorporates by reference and re-allege allegations 1-81 above, as if set forth fully herein.

83.　WeMash's acts described above constitute common law trademark infringement and unfair competition under common law.

84.　Upon information and belief, WeMash's acts have been willful and wanton and in reckless disregard of WeMesh's rights.

85.　As a result of the foregoing alleged actions, WeMash has been unjustly enriched, and WeMesh has been injured and damaged.  Unless enjoined by the Court, WeMash's actions will further impair the value of WeMesh's name, reputation, and goodwill and cause injury and damages to WeMesh.

## FIFTH CAUSE OF ACTION

### (Unfair Competition under Cal. Bus. & Prof. Code §17200)

86.　WeMesh incorporates by reference and re-allege allegations 1-85 above, as if set forth fully herein.

87.　WeMash's acts described above constitute unfair competition in violation of California Business and Professional Code §17200 *et seq.*, as they are unlawful, unfair, and fraudulent business practices, and are likely to deceive the public.

## SIXTH CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement)

88.　 WeMesh incorporates by reference and re-alleged allegations 1-87 above, as if set forth fully herein.

89.　WeMesh is the senior user of the WEMESH mark and owns all rights in the WEMESH mark.

90.　WeMash does not have any valid or protectable trademark rights in

WEMASH or WEMES that are prior in time to WeMesh's actual or constructive priority dates of its WEMESH mark, and any purported trademark rights held by WeMash have not been infringed by WeMesh.

91.     Accordingly, WeMesh is entitled to entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that WeMesh has not infringed any trademark rights owned by WeMash.

## PRAYER FOR RELIEF

WHEREFORE, WeMesh prays for the following:

A.     Entry of an order and judgment finding that WeMash has infringed WeMesh's rights in the WEMESH mark in connection with a software app though use of the marks WEMASH and/or WEMES in connection with a software app and in connection with a video library that is used in connection with the software app, and requiring that WeMash, including its agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with it, be enjoined and restrained from (a) using in any manner the WEMASH and WEMES trade names and trademark, or any name or mark that is confusingly similar to or a colorable imitation of this mark, in connection with a software app or marketing of any software product; (b) doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public, or prospective customers of WeMesh's products or services, as to the source of the products or services offered for sale, distributed, or sold, or likely to deceive members of the public, or prospective customers, into believing that there is some connection between WeMash and WeMesh; and (c) to remove the "Wemes" app from all app stores (including but not limited to the iTunes App Store), and remove all content from the www.wemash.com and www.wemesapp.com domains.

B.     A judgment ordering WeMash, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon WeMesh within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which it has complied with the injunction, ceased all sales of app products and services under the WEMASH and WEMES names and marks;

C.     A judgment ordering WeMash, pursuant to 15 U.S.C. § 1118, to deliver up for destruction, or to show proof of said destruction or sufficient modification to eliminate the infringing matter, all articles, packages, wrappers, products, displays, labels, signs, vehicle displays or signs, circulars, kits, packaging, letterhead, business cards, promotional items, clothing, literature, sales aids, receptacles or other matter in the possession, custody, or under the control of WeMash or its agents bearing the trademarks WEMASH or WEMES in any manner, or any mark that is confusingly similar to or a colorable imitation of these marks, and which relate to the use of those marks in connection with an app product or service;

D.     A judgment ordering WeMash to take all steps necessary to cancel or transfer to WeMesh, in WeMesh's sole discretion, any domain names that include the WEMASH or WEMES trademarks that are in WeMash's possession or control, and to remove all references to WEMASH and WEMES from all of its other websites;

E.     A judgment ordering WeMash to take all steps necessary to remove any app offered under the WEMASH and/or WEMES names from the various app stores;

F.     A judgment declaring that WeMesh is the senior user of the WEMESH mark, that WeMash has no prior rights in WEMASH or WEMES, and that WeMesh has not infringed any trademark rights of WeMash.

-33-

G.     For the recovery of all damages sustained by WeMesh due to the wrongs of WeMash and Jones, for an amount to be proved;

H.     For disgorgement of all gains, profits, and advantages derived by WeMash from its acts of trademark infringement, unfair competition, and other violations of law;

I.     A Declaration that Counter-Claim Defendant's revenues be held in a constructive trust for the benefit of Counter-Claimants;

J.     For exemplary and treble damages, as provided by the law;

K.     For punitive damages in connection with WeMesh's common law unfair competition claims;

L.     For all costs and expenses;

M.     For prejudgment interest at the maximum legal rate; and

N.    For such other and further relief as the Court may deem proper.

Respectfully submitted,

Defendant and Counter-Claimant WeMesh Inc.


By:

Dated:  April 8, 2016             BOBBY GHAJAR
                                  MARCUS D. PETERSON
                                  PILLSBURY WINTHROP SHAW PITTMAN LLP

                                  By:        /s/ Bobby Ghajar
                                        Bobby Ghajar
                                        Marcus D. Peterson

                                  Attorneys for Defendants
                                  WEMESH INC. and MICHAEL PAZARATZ

-35-

## **DEMAND FOR JURY TRIAL**

Defendant and Counter-Claimant WeMesh Inc. hereby demands trial by jury of all issues so triable.

Respectfully submitted,

Dated:  April 8, 2016

BOBBY GHAJAR
MARCUS D. PETERSON
PILLSBURY WINTHROP SHAW PITTMAN LLP

By:_____/s/ Bobby Ghajar_____
Bobby Ghajar
Marcus D. Peterson

Attorneys for Defendants
WEMESH INC. and MICHAEL PAZARATZ

-36-